[No. H015332. Sixth Dist. July 30, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
TIMOTHY SEAN O'NEIL, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part IIB.

COUNSEL

Vicki Firstman, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Martin S. Kaye and Lisa H. Ashley, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

COTTLE, P. J.—A jury found defendant Timothy Sean O'Neil guilty of carjacking (Pen. Code, § 215, subd. (a)).[1] In a bifurcated proceeding, defendant admitted a prior prison term allegation (§ 667.5, subd. (b)). Defendant

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

was sentenced to 10 years in state prison. On appeal he contends insufficient evidence supports his conviction for carjacking. Defendant also claims trial counsel provided ineffective assistance by failing to make an *in limine* motion to limit the use of defendant's prior felony convictions for purposes of impeachment.

I.

FACTS

At approximately 6:30 a.m. on October 14, 1995, William Campbell awoke to the sound of his 1993 Ford pickup truck starting outside his home on Bit Road, which is off Route 68 in Monterey County. Campbell had parked his truck in his driveway; the car had been left unlocked with the keys under its mat. Dressed in his underwear, Campbell looked out his window; when he saw a "figure" in the truck and saw the truck begin to move backwards, Campbell ran outside, down the steps, and out to his truck.

By the time Campbell got to his truck, defendant had backed it around so it was facing Bit Road. Campbell pounded on the driver's window while trying to release the push-button lock on the outside door handle. As he did so, defendant held down the inside door lock and ordered Campbell to "get away."

Defendant "floored" the truck. While its wheels spun for a few seconds, Campbell hopped into the back of the truck. Defendant then sped from the driveway, drove through a stop sign, and headed towards Monterey on Route 68. Defendant drove fast and erratically. Although Campbell was jostled about in the truck bed, he did not think defendant was trying to throw him out of the truck.

When defendant began driving straight on the highway, Campbell grabbed hold near the window at the back of the cab and peered into the passenger compartment. He yelled and pounded on the cab window. Defendant frequently turned to look at Campbell, yelling at Campbell to "get the fuck out." Defendant pulled to the side of the road two or three times, screaming at Campbell to get out; Campbell in turn screamed at defendant to give him his truck. As the exchange became "more heated and louder," Campbell became scared and asked defendant to "take [him] back." In response, defendant turned the truck around and drove back to the intersection of the highway and Bit Road, where he stopped.

Campbell and defendant continued to argue. When Campbell told defendant he knew defendant had arrived in the van parked nearby, defendant said "his wife and child were sick in [the] van and that he had to go get help right away." Campbell offered to take defendant "wherever he wanted to go," but defendant refused, ordering Campbell out of the truck. When Campbell told defendant he would call the police and defendant would get caught, defendant screamed at Campbell to "get out." Scared and cold, Campbell jumped out of the truck bed; defendant then "floored it" and took off toward Salinas on Route 68.

Campbell called 911 to report the incident. During that call, Campbell described defendant as a White male in his mid-30's with long, dirty brown hair, and he indicated defendant was wearing jeans and might be wearing a jacket. Later that day, an officer from the California Highway Patrol took a report from Campbell. The officer noted in his report that Campbell described the person driving the truck as having dark blonde hair, though Campbell recalled telling the officer it was brown.

On October 20, 1995, defendant drove Campbell's truck to the Monterey home of Rosette Roberts. He told Roberts he had purchased the truck from his brother, and he left it at Roberts's home until October 24. At some point, Roberts asked for a ride into town, but defendant said he did not want to ride around in Monterey. However, between 9:30 and 10 p.m. on October 24, defendant drove the truck, with Roberts as a passenger, to the Monterey Safeway on Fremont Boulevard. They bought groceries for defendant's cousin, and then drove to the home of that cousin.

By coincidence, Campbell saw his truck while it was parked at Safeway. Although the license plates had been changed,[2] Campbell recognized his truck because it had distinctive custom additions. Campbell was going to call police when he noticed defendant leave the store with a woman and a bag of groceries. Campbell entered his rental truck and followed as the two drove off. After losing sight of his truck in the Del Rey Oaks area of Monterey, Campbell went to a nearby police station, reported the incident, and gave police the number of the new license plate on the truck.

Defendant and Roberts left the home of defendant's cousin at approximately 2 a.m. after defendant announced he wanted to go because he did not want "to be on the road at 2:00." En route to Roberts's house, defendant

---

[2] The license plate on the truck had been stolen from a white pickup truck owned by a third party.

made a U-turn through a gas station at a time when Roberts noticed a police car in the area. Seaside Police Officer Kafer was driving a marked police car when he saw the pickup truck make a sudden turn into the gas station. Kafer confirmed it was the stolen Ford pickup he had heard about at the start of his shift and, after backup arrived, he tried to initiate a traffic stop by activating his emergency lights. Roberts suggested to defendant that he pull over, but defendant refused and sped away. During the chase, the police sirens were activated. Eventually, defendant stopped at a dead end, jumped out, and ran away, leaving the truck's engine running. Found hiding nearby, defendant was taken into custody.

On October 31, 1995, Campbell identified defendant from a photographic lineup as the person who had taken his pickup truck. Campbell also identified defendant at the preliminary hearing and again at trial.

Defendant testified on his own behalf as follows. At the time the pickup truck was stolen defendant probably was at his beach camp, where he was living. He did not know the truck had been stolen until after he was taken into custody. He had borrowed the truck from someone named "Smitty" and planned to take over its payments for Smitty, who was getting the truck from Smitty's brother. He testified Smitty told defendant not to drive the truck because he had not straightened things out with his brother yet. Defendant also said he did not want to drive in Monterey because he did not have a license. Defendant admitted driving to Safeway and then to his cousin's home. He said he made the U-turn into the gas station because he was arguing with Roberts and trying to get her to stay at his cousin's house, adding that he did not see Officer Kafer until the officer activated his lights to pull defendant over. Defendant said he fled from the police because he was in violation of his parole.

## II.

### DISCUSSION

#### A. *Sufficiency of the Evidence*

Defendant contends there was insufficient evidence to support his conviction for carjacking (§ 215, subd. (a)) because the evidence does not "establish an essential element of carjacking, i.e., that the 'caption' or gaining of possession of the property (as opposed to the 'carrying away' or asportation thereof) was accomplished by means of force or fear." In support of this contention, defendant argues that "an examination of the legislative history of section 215 establishes that the statute was enacted as a response to a new

genre of offenses in which there is a violent gaining of possession of a vehicle from its rightful possessor, *at the inception of the crime.*" (Italics added.)

Subdivision (a) of section 215 defines carjacking, in relevant part, as "the felonious taking of a motor vehicle in the possession of another, from his or her person or immediate presence, or from the person or immediate presence of a passenger . . . , against his or her will and with the intent to either permanently or temporarily deprive the person in possession of the motor vehicle of his or her possession, accomplished by means of force or fear."

 Contrary to defendant's contention, we conclude section 215 is not limited to cases in which a defendant initially gains possession by dispossessing the victim of the vehicle through the use of force or fear.

Section 215 "does not require that the victim be inside or touching the vehicle at the time of the taking." (*People* v. *Medina* (1995) 39 Cal.App.4th 643, 650 [46 Cal.Rptr.2d 112].) In light of the fact "a statute should be construed so that 'effect [is] given, if possible, to every word, clause and sentence of a statute' " (*Flint* v. *Sacramento County Employees' Retirement Assn.* (1985) 164 Cal.App.3d 659, 665-666 [210 Cal.Rptr. 439]), the *Medina* court reasoned that the Legislature would not have included two areas of taking, namely, from the person or from the immediate presence, if it had intended to require actual physical possession. (*People* v. *Medina, supra,* 39 Cal.App.4th at pp. 650-651.)

Just as a "mere theft becomes robbery if the perpetrator, having gained possession of the property without use of force or fear, resorts to force or fear while carrying away the loot" (*People* v. *Cooper* (1991) 53 Cal.3d 1158, 1165, fn. 8 [282 Cal.Rptr. 450, 811 P.2d 742]), so mere vehicle theft becomes carjacking if the perpetrator, having gained possession of the motor vehicle without use of force or fear, resorts to force or fear while driving off with the vehicle. Robbery is defined as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211.) While a distinct crime from robbery, the elements and statutory language of carjacking are analogous to those of robbery, and the "taking" language of the carjacking statute is framed in identical language to the robbery statute. We therefore presume the Legislature intended the carjacking statute to " ' "be given a like interpretation." ' " (*Keating* v. *Superior Court* (1982) 31 Cal.3d 584, 598 [183 Cal.Rptr. 360, 645 P.2d 1192]; see also *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 318 [250 Cal.Rptr. 116, 758 P.2d 58].)

Here, defendant had entered the victim's truck and had begun to move it backwards while the victim was inside his residence. While defendant was still in the process of taking the truck, the victim arrived, confronted the defendant, demanded his truck back, and got into the truck bed. Eventually, when the defendant screamed at the victim using profane language and appeared to become very angry, the victim became so fearful he relinquished his truck to the defendant. Assuming defendant's initial taking of the car constituted a mere vehicle theft, that theft became a carjacking once defendant resorted to the use of fear to retain possession of the truck.

We are unpersuaded by defendant's argument that carjacking and robbery cannot be analogized because robbery requires asportation while carjacking does not.[3] In any event, the movement required for a robbery conviction is very slight and has been distinguished from the asportation to a place of temporary safety, which determines when the "taking" ends. (See *People* v. *Cooper, supra,* 53 Cal.3d at p. 1165, fn. 8.) Even if no movement of the vehicle is required for a carjacking conviction, we agree with the People that this alone "would not be determinative as to when the 'taking' ends."

Defendant refers to the legislative history of section 215 to support his argument that carjacking was intended to be confined to those cases where the perpetrator uses force or fear "in order to gain possession of the vehicle." However, we find no ambiguity in the statute which requires construction through a review of the legislative history, and we "will not 'interpret away clear language in favor of an ambiguity that does not exist.' [Citation.]" (*Hartford Fire Ins. Co.* v. *Macri* (1992) 4 Cal.4th 318, 326 [14 Cal.Rptr.2d 813, 842 P.2d 112]; see also *People* v. *Coronado* (1995) 12 Cal.4th 145, 151 [48 Cal.Rptr.2d 77, 906 P.2d 1232].)

In any event, we find defendant's statutory construction argument unpersuasive. Assuming the statute is subject to construction because its language is susceptible to more than one reasonable interpretation (*People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1007-1008 [239 Cal.Rptr. 656, 741 P.2d 154]), we presume the Legislature intended the language used in the carjacking enactment should be given a like interpretation to the analogous robbery statute. (*Keating* v. *Superior Court, supra,* 31 Cal.3d at p. 598.) In so doing, we reject defendant's contention that such an application of this rule of statutory construction here "would be inconsistent with the apparent purpose

---

[3]We are aware the California Supreme Court has granted review in *People* v. *Montero* (Cal.App.) December 11, 1996, (S056513), which is a case in which the issue whether carjacking requires movement of the vehicle is discussed.

and intention of the lawmakers, and would lead to unwise policy. [Citation.]"

Even if, as defendant asserts, ". . . the Legislature was moved to specifically make carjacking a crime because of its growing frequency among thrill seekers and because of the difficulty in convicting such individuals of traditional robbery . . . , the reason for a special statute on the subject, with a penalty greater than that for second degree robbery, is that carjacking is a particularly serious crime that victimizes persons in vulnerable settings and, because of the nature of the taking, raises a serious potential for harm to the victim, the perpetrator and the public at large. [Citations.]" (*People* v. *Antoine* (1996) 48 Cal.App.4th 489, 495 [56 Cal.Rptr.2d 530], italics omitted.)

We agree with the People that the serious potential for harm recognized by the *Antoine* court exists whenever there is a confrontation between the taker of a vehicle and the victim "and in no way depends on whether the confrontation and use of 'force or fear' occurs before, while, or after the defendant initially takes possession of the vehicle." While the legislation may have been motivated in part by the rising incidents of carjackings by "thrill seekers," we are convinced that section 215 is not limited to cases in which defendant is a thrill seeker, as defendant's argument might imply.

We are similarly unpersuaded by defendant's argument that the language of section 215, subdivision (c) which provides the statute "shall not be construed to supersede or affect Section 211" demonstrates the Legislature was attempting to proscribe a completely new offense, "the gravamen of which is the forceful and/or violent *gaining of possession* of a vehicle from its right possessor, at the inception of the crime." The legislative history of section 215 makes clear that the need for the crime of carjacking, as distinct from robbery, stemmed from the fact " '. . . many carjackings cannot be charged as robbery because it is difficult to prove the intent required of a robbery offense (to permanently deprive one of the car) since [many] of these gang carjackings are thrill seeking thefts. . . .' [Citations.]" (*People* v. *Medina, supra*, 39 Cal.App.4th at p. 648.) Therefore, section 215, subdivision (c) provides that "[a] person may be charged with a violation of this section and Section 211 [robbery]. However, no defendant may be punished under this section and Section 211 for the same act which constitutes a violation of both this section and Section 211." Defendant's contention to the contrary, this language does not suggest the statute should be construed as requiring that the use of force or violence in a carjacking must be contemporaneous with the gaining of possession of the vehicle.

In light of our above analysis of section 215, we conclude substantial evidence supports defendant's conviction for carjacking.

B. *Ineffective Assistance of Counsel**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## III.

### DISPOSITION

The judgment is affirmed.

Premo, J., and Bamattre-Manoukian, J., concurred.

---

*See footnote, *ante*, page 1126.