Filed 6/14/13  P. v. Phinsavanh CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>PHONESSAVANH PHINSAVANH,<br><br>    Defendant and Appellant. | D061750<br><br><br><br>(Super. Ct. No. SCD237499) |


APPEAL from a judgment of the Superior Court of San Diego County, Lisa A. Foster, Judge.  Affirmed.

Marianne Harguindeguy Cox, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Charles C. Ragland, Deputy Attorneys General, for Plaintiff and Respondent.

Phonessavanh Phinsavanh appeals a judgment following his jury conviction of one count of carjacking (Pen. Code, § 215, subd. (a))[1] and one count of unlawful taking or driving a vehicle (Veh. Code, § 10851, subd. (a)). On appeal, he contends his carjacking conviction must be reversed because: (1) the evidence is insufficient to support findings that the victim possessed the vehicle at the time of the taking and Phinsavanh used force or fear to take the vehicle; and (2) the carjacking statute was not intended to address the circumstances in this case.

FACTUAL AND PROCEDURAL BACKGROUND

At about 12:00 p.m. on November 10, 2011, Marcus Neal parked his black Ford Expedition on the street in front of his grandmother's house on Hilltop Drive. He left its doors unlocked, its keys in the ignition, and its windows down. He went inside to assist his uncle in lifting his grandmother into bed in the front bedroom.

After ingesting methamphetamines, Phinsavanh and Phao Chav walked down the sidewalk on Hilltop Drive and approached Neal's parked Expedition. Phinsavanh and Chav got in it and Phinsavanh drove it away. Hearing the Expedition's loud engine with its enhanced exhaust system, Neal glanced out the front bedroom window and saw his Expedition moving and someone inside it. Neal ran outside, flagged down a passing utility truck, and got in. The truck's driver pursued the Expedition. When the Expedition stopped at a red light at an intersection about a mile from his grandmother's house, Neal got out of the truck, ran up to the Expedition, and jumped on its passenger side running

---

1      All statutory references are to the Penal Code unless otherwise specified.

board.  Because the front passenger side window was open, he reached inside and grabbed onto a handle to steady himself.  Neal saw Phinsavanh sitting in the driver's seat and Chav in the passenger's seat.  He yelled at Phinsavanh that the Expedition was his car and asked what he was doing in it.  Phinsavanh and Chav repeatedly said, "oh shit, oh shit."

When the traffic light turned green, Phinsavanh drove the Expedition through the intersection with Neal hanging onto its side.  Afraid of getting hurt, Neal said to him: "Okay, okay, okay.  Stop.  Slow down, slow down.  I promise I['ll] get off."  Phinsavanh then began to drive in a zigzag pattern and pumped the brakes.  After the Expedition had travelled about 20 feet past the intersection at a speed of about 15 to 20 miles per hour, Neal jumped off and fell onto the street.  Neal injured his shoulder and stomach and sustained cuts and scrapes to his knuckles, knee, and elbow.

Responding to a radio call regarding a carjacking, San Diego Police Sergeant Martha Sainz stopped Neal's black Ford Expedition on 45th Street.  Phinsavanh, its driver, and Chav, its front passenger, were removed from the Expedition.

An information charged Phinsavanh and Chav with carjacking (§ 215, subd. (a)) and unlawful taking or driving a vehicle (Veh. Code, § 10851, subd. (a)).  The information also alleged Phinsavanh had previously been convicted of felony vehicle theft (§ 666.5, subd. (a)), had been convicted twice or more of a felony offense (§ 1203, subd. (e)(4)), and had served five prior prison terms (§§ 667.5, subd. (b), 668).

3

Following trial, the jury found Phinsavanh guilty of both counts.[2]  The trial court then found true the prior conviction allegations against Phinsavanh.  Pursuant to section 1385, the trial court struck the prison prior allegations and sentenced Phinsavanh to an upper term of four years in prison for his count 2 vehicle theft conviction (Veh. Code, § 10851, subd. (a)) and imposed, but stayed pursuant to section 654, a lower term of three years in prison for his count 1 carjacking conviction (§ 215, subd. (a)).  Phinsavanh timely filed a notice of appeal.

## DISCUSSION

### I

*Substantial Evidence to Support Carjacking Conviction*

Phinsavanh contends his carjacking conviction must be reversed because the evidence is insufficient to support findings that (a) Neal possessed the Expedition at the time of the taking, and (b) he (Phinsavanh) used force or fear to take the Expedition.

### A

When a defendant on appeal challenges a criminal conviction based on a claim of insufficiency of the evidence, "the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence--that is, evidence that is reasonable, credible, and of solid value--such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11, citing *People v. Johnson* (1980) 26 Cal.3d

---

[2]     A mistrial was declared on the counts against Chav.

4

557, 578.) "Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. [Citation.] Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

The substantial evidence standard of review involves two steps. "First, one must resolve all explicit conflicts in the evidence in favor of the respondent and presume in favor of the judgment all *reasonable* inferences. [Citation.] Second, one must determine whether the evidence thus marshaled is substantial. While it is commonly stated that our 'power' begins and ends with a determination that there is substantial evidence [citation], this does not mean we must blindly seize any evidence in support of the respondent in order to affirm the judgment. . . . [Citation.] '[I]f the word "substantial" [is to mean] anything at all, it clearly implies that such evidence must be of ponderable legal significance. Obviously the word cannot be deemed synonymous with "any" evidence. It must be reasonable . . . , credible, and of solid value . . . .' [Citation.] The ultimate determination is whether a *reasonable* trier of fact could have found for the respondent based on the *whole* record." (*Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1632-1633, fns. omitted.) "[T]he power of an appellate court *begins* and *ends* with the determination as to whether, *on the entire record*, there is substantial evidence, contradicted or uncontradicted, which will support the determination, and when two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court. *If such substantial evidence be found, it is of no consequence that the trial court believing other evidence, or*

*drawing other reasonable inferences, might have reached a contrary conclusion*."

(*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873-874.)

B

Section 215, enacted in 1993, defines the offense of "carjacking" as "the felonious taking of a motor vehicle in the possession of another, from his or her person or immediate presence, or from the person or immediate presence of a passenger of the motor vehicle, against his or her will and with the intent to either permanently or temporarily deprive the person in possession of the motor vehicle of his or her possession, accomplished by means of force or fear." (§ 215, subd. (a); *People v. Medina* (1995) 39 Cal.App.4th 643, 647.)

We consider the elements and statutory language of section 211 robbery in interpreting the carjacking statute. "Robbery is defined as 'the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear.' (§ 211.) While a distinct crime from robbery, the elements and statutory language of carjacking are analogous to those of robbery, and the 'taking' language of the carjacking statute is framed in identical language to the robbery statute. We therefore presume the Legislature intended the carjacking statute to ' " 'be given a like interpretation.' " ' " (*People v. O'Neil* (1997) 56 Cal.App.4th 1126, 1131 (*O'Neil*).) "[W]e presume the Legislature intended the language used in the carjacking enactment should be given a like interpretation to the analogous robbery statute." (*Id*. at p. 1132.) Likewise, in interpreting section 215, the California Supreme Court stated: "In the absence of a contrary intent, we presume that in adopting

the phrase, 'felonious taking,' from the robbery statute, the Legislature intended that those same words within section 215 be given the same construction." (*People v. Lopez* (2003) 31 Cal.4th 1051, 1063 (*Lopez*).) "The legislative history is replete with comparisons between robbery and the new crime of carjacking." (*Id*. at p. 1062.) *Lopez* concluded a section 215 carjacking offense, like a robbery offense, requires asportation or movement of the motor vehicle. (*Lopez,* at pp. 1054-1055, 1063.)

C

Phinsavanh asserts his carjacking conviction must be reversed because the evidence is insufficient to support a finding that Neal possessed the Expedition at the time of the taking. A carjacking offense requires a "felonious taking of a motor vehicle *in the possession of another . . . .*" (§ 215, subd. (a), italics added.) In adopting the phrase, "in the possession of another," from the robbery statute, we conclude the Legislature intended that those same words within section 215 be given the same construction. (Cf. *Lopez*, *supra*, 31 Cal.4th at p. 1063 [similar conclusion regarding the phrase "felonious taking" in section 215].) We consider the ample case law on robbery offenses in interpreting what constitutes "in the possession of another" under the carjacking statute.

"A robbery cannot be committed against a person who is not in possession of the property taken or retained. [Citation.] Possession may be actual or constructive." (*People v. Bradford* (2010) 187 Cal.App.4th 1345, 1349.) "A person who owns property or who exercises direct physical control over it has possession of it, but neither ownership nor physical possession, is required to establish the element of possession for the

purposes of the robbery statute." (*People v. Scott* (2009) 45 Cal.4th 743, 749 (*Scott*).) "[T]he theory of constructive possession has been used to expand the concept of possession to include employees and others as robbery victims . . . ." (*People v. Nguyen* (2000) 24 Cal.4th 756, 762.) "[B]ased upon a theory of constructive possession, ' "a store employee may be the victim of a robbery even though he is not its owner and not at the moment in immediate control of the stolen property." ' " (*Scott*, at p. 751.) Therefore, the element of possession for a robbery offense is established if the property is taken while an employee of the property owner is on duty. (*Id*. at p. 756.) Furthermore, nonemployees who have a "special relationship" with the owner of the property sufficient to show they had authority or responsibility to protect the stolen property on behalf of the owner can also be victims of a robbery. (*Id*. at p. 753.) *Scott* concluded: "By requiring that the victim of a robbery have possession of the property taken, the Legislature has included as victims those persons who, because of their relationship to the property or its owner, have the right to resist the taking, and has excluded as victims those bystanders who have no greater interest in the property than any other member of the general population." (*Id*. at pp. 757-758.)

In this case, "possession" for purposes of the carjacking statute is established if the motor vehicle is taken from its owner or from a person with actual or constructive possession of the vehicle, which we interpret expansively as in the context of robbery as discussed above. Contrary to Phinsavanh's apparent assertion, section 215's phrase "in the possession of another" is not interpreted narrowly to require that a motor vehicle be taken from a person with actual physical possession (i.e., dominion and control) of the

8

vehicle.  The California Supreme Court stated: "A person who *owns* property or who exercises direct physical control over it *has possession* of it . . . for the purposes of the robbery statute."  (*Scott*, *supra*, 45 Cal.4th at p. 749, italics added.)  As discussed above, we interpret that section 215 phrase in the same manner as it is interpreted for purposes of the robbery statute.  The record in this case shows, and Phinsavanh does not dispute, that Neal was the owner of the Expedition that he took.  Therefore, there is substantial evidence to support the finding that Phinsavanh took the Expedition "in the possession of another" for purposes of a carjacking under section 215.  (*Scott,* at p. 749.)

Even if a narrower definition of possession were applied, we would conclude there is substantial evidence Phinsavanh feloniously took the Expedition from Neal's possession.  A "felonious taking," whether a robbery or a carjacking, consists of both the initial taking and asportation thereafter of the property or vehicle.  A carjacking continues until the perpetrator reaches a place of temporary safety.  (*People v. Flynn* (2000) 77 Cal.App.4th 766, 772 (*Flynn*).)  Because Neal immediately pursued Phinsavanh after the initial taking and caught up with the Expedition about a mile from Neal's grandmother's house, there is substantial evidence to support a finding, objectively determined, that Phinsavanh had not yet reached a temporary place of safety.  Therefore, when Neal jumped onto the Expedition's running board and demanded his vehicle back, he had sufficient control and dominion over it for purposes of a section 215 carjacking.  Because Neal had the right to resist the taking of his Expedition, he had possession of it within the meaning of section 215.  (Cf. *Scott*, *supra*, 45 Cal.4th at pp. 757-758.)  Contrary to Phinsavanh's assertion, Neal's purported "precarious position" on the running board of the

Expedition did not preclude a finding he had possession of the Expedition for purposes of section 215.

People v. Cabrera (2007) 152 Cal.App.4th 695, cited by Phinsavanh, is factually and legally inapposite to this case and does not persuade us to reach a contrary conclusion. We further note Phinsavanh's appellant's opening brief purportedly quotes *our* language in *Cabrera*, but that language is actually quoted from a concurring opinion of Justice Werdegar in *People v. Montoya* (2004) 33 Cal.4th 1031, 1038 (conc. opn. of Werdegar, J.). (*Cabrera*, at pp. 702-703.) In any event, we do not find Justice Werdegar's concurring opinion in *Montoya* sufficiently persuasive to preclude a finding of possession by Neal in this case. To the extent carjacking is a crime against possession rather than ownership, as Justice Werdegar apparently believes, the requirement that the vehicle be taken from the *immediate presence* of the owner or possessor of the vehicle, or a passenger thereof, satisfies the legislative intent underlying section 215.

Phinsavanh alternatively asserts Neal was not in the "immediate presence" of the Expedition at the time Phinsavanh took it. He cites *People v. Medina*, *supra*, 39 Cal.App.4th 643 in support of his apparent assertion that the Expedition had to be within Neal's reach or control such that he could have retained possession of it had he (Phinsavanh) not prevented him from doing so by force or fear. As discussed above, carjacking, like robbery, is an offense that continues after the initial taking through asportation until the perpetrator reaches a temporary place of safety. (*Lopez*, *supra*, 31 Cal.4th at pp. 1054-1055, 1063; cf. *People v. Gomez* (2008) 43 Cal.4th 249, 258 (*Gomez*) [robbery is a continuing offense]; *Flynn*, *supra*, 77 Cal.App.4th at p. 772 ["A theft or

10

robbery remains in progress until the perpetrator has reached a place of temporary safety."].) Because there is substantial evidence to support a finding that Neal pursued and caught up with Phinsavanh in the Expedition before he reached a place of temporary safety, there likewise is substantial evidence to support a finding that the Expedition was within the "immediate presence" of Neal during the felonious taking by Phinsavanh (e.g., when Neal jumped onto the Expedition's running board).

In *Gomez*, the California Supreme Court held that the "immediate presence" requirement for robbery was satisfied if that presence did not occur on the initial taking, but instead occurred during asportation of the property. (*Gomez*, *supra*, 43 Cal.4th at pp. 258-264.) *Gomez* stated: "Under the language of section 211, the phrases 'person or immediate presence' and 'force or fear' both refer to the 'taking' of personal property. The force of fear element of robbery can be satisfied during either the caption or the asportation phase of the taking. [Citation.] By the same logic, the *immediate presence element can be satisfied at any point during the taking*." (*Id*. at p. 261, italics added.) *Gomez* held the "immediate presence" element of robbery "may also be satisfied . . . during asportation." (*Id*. at p. 263.) Therefore, *Gomez* concluded "[a] victim who tries to stop a thief from getting away with his property *is* in the presence of the property." (*Id*. at p. 264, fn. omitted.) Applying that holding to the same element in a carjacking offense, we conclude a victim not present during the initial taking of a motor vehicle may subsequently be in the immediate presence of the vehicle during the asportation or driving away phase of a carjacking offense. When Neal pursued and caught up with the

11

Expedition and jumped onto its running board, he was in its "immediate presence" for purposes of a section 215 carjacking offense. (*Gomez,* at p. 264.)

In any event, there also is substantial evidence to support a finding that Neal was in the "immediate presence" of the Expedition when Phinsavanh initially took it. In the context of robbery offenses, courts have held victims to be within the immediate presence of stolen property at distances equal to or greater than that involved in this case. (See, e.g., *Gomez, supra*, 43 Cal.4th at p. 265 [distance of 100 to 150 feet away]; *People v. Harris* (1994) 9 Cal.4th 407, 422-424 [victim forcibly restrained in car outside home and office while perpetrators looted home and office]; *People v. Webster* (1991) 54 Cal.3d 411, 439-442 [victim one-quarter mile away when car was taken]; *People v. Hayes* (1990) 52 Cal.3d 577, 626-629 [victim in another room 107 feet away from motel office where property was taken].) The record in this case shows Neal was in the front bedroom of his grandmother's house when he looked through the window and saw his Expedition on the street being driven away. The distance between Neal and the Expedition at that time presumably was less than the distances in the above-cited robbery cases in which the "immediate presence" element was satisfied. We conclude there is substantial evidence to support a finding that Neal was in the immediate presence of the Expedition at the time Phinsavanh initially took it.

D

Phinsavanh asserts his carjacking conviction must be reversed because there is insufficient evidence that he used force or fear to take the Expedition. In so arguing, he apparently does not disagree that the "force or fear" element of section 215 can be

12

satisfied during the asportation or driving away phase of a carjacking. The force or fear element of robbery "can be satisfied during either the caption or the asportation phase of the taking." (*Gomez*, *supra*, 43 Cal.4th at p. 261, citing *People v. Anderson* (1966) 64 Cal.2d 633, 638 and *People v. Estes* (1983) 147 Cal.App.3d 23, 28.) Applying that case law to the carjacking statute, the section 215 "force or fear" element can likewise be satisfied during either the initial taking or the asportation or driving away phase of a carjacking. (*O'Neil*, *supra*, 56 Cal.App.4th at p. 1133.)

Phinsavanh instead argues the evidence is insufficient to support a finding that he used force or fear against Neal when he (Neal) jumped onto the Expedition's running board after catching up with it. He argues the evidence shows, at most, that he (Phinsavanh) was surprised when he saw Neal on the running board and, in a panic, drove through the intersection and braked to allow Neal to jump off. However, in so arguing, Phinsavanh misconstrues and/or misapplies the substantial evidence standard of review. In reviewing the record for substantial evidence, we consider the evidence and make all reasonable inferences favorable to support the verdict. "[W]hen two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court. *If such substantial evidence be found, it is of no consequence that the trial court believing other evidence, or drawing other reasonable inferences, might have reached a contrary conclusion*." (*Bowers v. Bernards*, *supra*, 150 Cal.App.3d at pp. 873-874.)

Considering the evidence in this case favorably to support the carjacking conviction, we conclude there is substantial evidence to support the finding that

13

Phinsavanh accomplished the felonious taking of the Expedition "by means of force or fear." (§ 215, subd. (a).) After Neal caught up with the Expedition and jumped onto its running board while it was stopped at a red light, Phinsavanh began accelerating the vehicle when the light turned green. Apparently afraid for his safety, Neal then told Phinsavanh: "Okay, okay, okay. Stop. Slow down, slow down. I promise I['ll] get off." Rather than immediately stopping, Phinsavanh drove the Expedition through the intersection in a zigzag pattern and pumped its brakes. About 20 feet past the intersection, Neal jumped off the Expedition while it was going about 15 to 20 miles per hour and he tumbled onto the street. Neal injured his shoulder and stomach and sustained cuts and scrapes to his knuckles, knee, and elbow.

Based on that evidence, the jury could reasonably infer Neal was afraid during that sequence of events. (Cf. *O'Neil*, *supra*, 56 Cal.App.4th at pp. 1128, 1134 [substantial evidence of "force or fear" when victim jumped onto back of truck during asportation, subsequently became afraid for his safety, and then jumped off]; *People v. Wright* (1996) 52 Cal.App.4th 203, 210 [constructive force for robbery includes force, not actual or direct, exerted on a victim by operating on a fear of injury].) "So long as the perpetrator uses the victim's fear to accomplish retention of the [vehicle], it makes no difference whether the fear is generated by the perpetrator's specific words or actions designed to frighten, or by the circumstances surrounding the taking itself." (*Flynn*, *supra*, 77 Cal.App.4th at p. 772.) In this case, the record supports a finding that Phinsavanh used force and/or fear when he drove the Expedition in a zigzag pattern through the intersection with Neal standing on its running board, and did so to prevent Neal from

14

regaining it. There is substantial evidence to support the "force or fear" element of Phinsavanh's carjacking offense.[3]

## II

### *Intent of Carjacking Statute*

Phinsavanh contends his carjacking conviction must be reversed because the carjacking statute was not intended to address the circumstances in this case. In support of his argument, he cites the following language from *Lopez*, *supra*, 31 Cal.4th at page 1057:

> "The legislative history [of section 215] reveals the underlying purpose for creating the new crime of carjacking: 'According to the author [of the legislative bill]: [¶] There has been *considerable increase in the number of persons who have been abducted*, many have been subjected to the violent taking of their automobile and some have had a gun used in the taking of the car. This relatively 'new' crime appears to be as much thrill-seeking as theft of a car. If all the thief wanted was the car, *it would be simpler to hot-wire the automobile without running the risk of confronting the driver*. People have been killed, seriously injured, and placed in great fear, and this calls for a strong message to discourage these crimes. Additionally law enforcement is reporting this new crime is becoming the initiating rite for aspiring gang members and the incidents are drastically increasing. [¶] Under current law there is no carjacking crime per se and many carjackings cannot be charged as robbery because it is difficult to prove the intent required of a robbery offense (to permanently deprive one of the car) since many of these gang carjackings are thrill seeking thefts. There is a need to prosecute this crime.' (Assem. Com. on Pub. Safety, Analysis of Sen. Bill No. 60 (1993-1994 Reg. Sess.) July 13, 1993, p. 1, italics added.)"

---

3    Contrary to Phinsavanh's assertion, the trial court's statements in imposing the lower term for his carjacking conviction do not show there is insufficient evidence to support that conviction.

He also cites *People v. Antoine* (1996) 48 Cal.App.4th 489, in which we stated: "[T]he *reason* for a special statute on [carjacking], with a penalty greater than that for second degree robbery, is that carjacking is a particularly serious crime that victimizes persons in vulnerable settings and, because of the nature of the taking, raises a serious potential for harm to the victim, the perpetrator and the public at large." (*Id*. at p. 495.)

Based on our review of the record in this case, we conclude Phinsavanh's conduct in the circumstances of this case falls within the type of offense the Legislature intended to address in enacting section 215. In broad daylight, Phinsavanh entered the Expedition through an unlocked door and started it with a key left in the ignition. Its windows were open and it was parked on the street in front of a home. By the very nature of those circumstances, there was a significant risk the owner or possessor of the Expedition was nearby and would attempt to retain or regain possession of it. That is what happened. Neal pursued the stolen Expedition and attempted to regain it at the red light by jumping on its running board and demanding it back. A confrontation occurred between Phinsavanh and Neal. Phinsavanh drove the Expedition through and past the intersection in a zigzag pattern and pumped its brakes. Neal jumped off and was injured. We conclude the confrontation that occurred in this case is the type of confrontation the Legislature intended to address in enacting section 215. Phinsavanh's conduct was of the type that "raise[d] a serious potential for harm to the victim, the perpetrator and the

16

public at large." (*People v. Antoine*, *supra*, 48 Cal.App.4th at p. 495.)  Phinsavanh was properly convicted of a section 215 carjacking offense.[4]

DISPOSITION

The judgment is affirmed.

McDONALD, J.

WE CONCUR:

McCONNELL, P. J.

McINTYRE, J.

---

[4]     *People v. Coleman* (2007) 146 Cal.App.4th 1363, cited by Phinsavanh, is factually and legally inapposite to this case and does not persuade us to reach a contrary conclusion.