Filed 7/29/24  P. v. Washington CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B331039 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. KA099458-01 |
| v. | |
| DARNELL WASHINGTON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Craig E. Veals, Judge.  Affirmed.

Lenore De Vita, under appointment by the Court of Appeal, for Plaintiff and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Wyatt E. Bloomfield and Stefanie Yee, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Darnell Washington was convicted of carjacking, and other crimes.[1]  On appeal, Washington insists the judgment must be reversed because there is insufficient evidence to support the jury's finding that he took the victim's car by force or fear.  We conclude otherwise and affirm.

## FACTUAL BACKGROUND

In the early morning on September 2, 2012, Sheriff's Deputy John Marquez was on traffic patrol in a marked car in South El Monte.  While waiting at a traffic light, Marquez saw a woman jaywalk and enter a convenience store.  He pulled into a parking lot across the street intending to issue the woman a warning or citation when she emerged.  As he waited, Marquez ran the license plates of cars parked in the lot, believing one might belong to the woman.  The return on a Ford Explorer indicated the individual associated with the vehicle was wanted for something serious and triggered a dispatch alert.  Marquez repositioned his patrol car to face the Explorer and got out.

As Marquez emerged from his car, he saw a man (later identified as Washington) get out on the passenger side of the Explorer holding a shotgun with the barrel pointed up.  Washington then leveled the shotgun, pointing it toward Marquez.  Believing he was about to be shot, Marquez fired at Washington and the two exchanged gunfire before Washington ran off.  Marquez was shot but continued to pursue Washington.  The jaywalker joined Washington as he ran.  Marquez saw Washington approach a vehicle turning onto a nearby street.  Jishan Kader, the driver of that car, had slowed to make a right

_____

[1]     Our factual and procedural recitation is limited to facts relevant to the carjacking or useful for context.

2

turn. As he did so, Kader saw Washington and a woman running towards his car on the driver's side. They were a few feet away and Washington was holding a large weapon (long gun). Kader "got really scared" and quickly sped away before the couple reached his car.

Marquez chased Washington toward a residential area where a bystander directed Marquez to Linard Street. Marquez saw Washington pull out of the driveway of a house on Linard driving a black Volkswagen Golf and speed away. Other deputies arrived to assist Marquez, who was taken to a hospital and treated for shotgun pellet wounds on his temple, left and right forearms and thighs.

Isabel Soto lived on Linard Street with her 60-year-old brother and 66-year-old sister-in-law, who had an unspecified medical condition or disability. Soto owned a black Volkswagen Golf. On the morning of September 2, 2012, Soto was alone in front of her house when she was approached by Washington and a woman. Washington was holding what Soto believed was a rifle. He asked Soto for the keys to her car. Soto did nothing.

Washington and his companion then went through an open side gate and entered Soto's home. Soto followed them in. Soto's brother and sister-in-law were in the house. Washington asked Soto's brother for the keys to Soto's car. The brother handed over the keys and Washington and the woman sped away in Soto's car. Marquez saw Washington drive out of Soto's driveway in her black Volkswagen. Sheriff's personnel recovered expended shot shells and numerous cartridge cases at the scene of the shooting in the parking lot, and an expended shot shell near the side gate at Soto's home.

## PROCEDURAL BACKGROUND

A February 2023 amended Information charged Washington with willful, deliberate, and premediated attempted murder of a peace officer (Pen. Code,[2] §§ 664, 187, subd. (a)); attempted carjacking of Kader (§ 664/215, subd. (a)); carjacking of Soto (§ 215, subd. (a)); possession of a firearm by a felon with two priors (§ 29800, subd. (a)(1)); and assault with a firearm (§ 245, subd. (a)(2)). The Information alleged Washington personally used a firearm as to three counts (§ 12022.53, subd. (b)), and personally discharged a firearm as to two counts (§ 12022.53, subd. (c).) It was further alleged Washington suffered two prior serious or violent felony convictions for robbery (§ 211) and carjacking (§ 215) in 2005 (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)).

Among other crimes, a jury found Washington guilty of carjacking Soto and possession of a firearm by a felon. The jury found true the allegation that Washington personally used a firearm (§ 12022.53, subd. (b)) in the commission of the carjacking. At his sentencing hearing, Washington admitted two prior felony convictions. The trial court struck several enhancements, and sentenced Washington to 25 years to life in prison for the carjacking, plus two years for possessing a firearm, to be served concurrently. This appeal followed.

## DISCUSSION

Washington maintains that his conviction for carjacking Soto must be reversed because the prosecution failed to establish every element of that crime beyond a reasonable doubt, namely

---

[2] All statutory references are to the Penal Code.

4

that taking Soto's car against her will was accomplished by force or fear.

I.      *The Standard of Review*

We review for substantial evidence a challenge to the sufficiency of the evidence to support a judgment. (*People v. Hicks* (1982) 128 Cal.App.3d 423, 429.) Under this deferential standard, we review the record in the light most favorable to the judgment and presume the existence of every fact the trier could reasonably deduce from the evidence. (*People v. Lee* (2011) 51 Cal.4th 620, 632.) We must also " 'accept logical inferences that the jury might have drawn from the circumstantial evidence.' " (*People v. Flores* (2020) 9 Cal.5th 371, 411.) It is the " 'exclusive province of the . . . jury to determine the credibility of a witness,' " and to determine the weight to be given to the testimony adduced at trial. (*Lee,* at p. 632; *Hicks*, at p. 429.) We will not reweigh evidence nor reevaluate witness credibility. (*People v. Albillar* (2010) 51 Cal.4th 47, 60 (*Albillar*).)

To warrant reversal under this standard of review, the appellant " 'bears an enormous burden' " to demonstrate that " 'upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' " (*People v. Bolin* (1998) 18 Cal.4th 297, 331; *People v. Cravens* (2012) 53 Cal.4th 500, 508.) "If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*Albillar, supra,* 51 Cal.4th at p. 60.)

II.      *The Crime of Carjacking.*

Carjacking is the felonious taking of a motor vehicle in the possession of another, from the immediate presence of a person or

that of a passenger in the vehicle, against his or her will and with the intent either to permanently or temporarily deprive the person in possession of the vehicle of that possession, accomplished by means of force or fear. (§ 215, subd. (a); *People v. Capistrano* (2014) 59 Cal.4th 830, 886, overruled on another ground by *People v. Hardy* (2018) 5 Cal.5th 56, 104.) "The carjacking statute does not define 'force,' [or "fear,"] [b]ut courts interpreting the carjacking statute have analogized it to the robbery statute, section 211, as both share similar language and elements."[3] (*People v. Lopez* (2017) 8 Cal.App.5th 1230, 1234.) Consequently, in evaluating Washington's argument as to the element of force or fear for carjacking, we rely on cases interpreting the disjunctive force or fear element in the context of robbery.

"Most robberies involve actual or threatened force, resulting in fear on the part of the victim, at the time the property is taken. [Citation.] However, the requisite fear need not be the result of an express threat." (*People v. Flynn* (2000) 77 Cal.App.4th 766, 771 (*Flynn*).) Whether fear exists may be inferred from the circumstances; it need not result from an express threat or use of a weapon. (*People v. Morehead* (2011) 191 Cal.App.4th 765, 775 (*Morehead*).) The victim is not required to resist, and their fear need not be extreme. (*Ibid*.) Nor is it necessary that the victim testify they were afraid. (*People v. Mungia* (1991) 234 Cal.App.3d 1703, 1709, fn. 2 (*Mungia*).) All that is necessary is that the evidence demonstrates conduct,

---

[3] "Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211.)

words or circumstances reasonably calculated to produce fear. (*Morehead,* at p. 775; *People v. Davison* (1995) 32 Cal.App.4th 206, 212 (*Davison*) [The element of fear is satisfied when there is sufficient fear to cause the victim to comply with the unlawful demand for their property].)  Although the victim must actually be afraid, that fear may be inferred and need only be enough to cause them to comply with the demand for the property.  (*People v. Cuevas* (2001) 89 Cal.App.4th 689, 698.)

Intimidation alone may satisfy the "fear" element.  " 'Where intimidation is relied upon, it must be established by proof of conduct, words, or circumstances reasonably calculated to produce fear.  But it is not necessary that there be proof of actual fear, as fear may be presumed where there is just cause for it.' " (*People v. Borra* (1932) 123 Cal.App. 482, 484.)  Intimidation is a synonym for fear and a jury may infer fear "from the circumstances despite even superficially contrary testimony of the victim."  (*People v. Iniguez* (1994) 7 Cal.4th 847, 857.)

III.    *Sufficient Evidence Supports Washington's Carjacking Conviction.*

Washington does not challenge the first three elements of his carjacking conviction, namely, that he took a vehicle that was not his own, in Soto's immediate presence, and against her will. Rather, the sole issue on appeal is whether sufficient evidence supports the jury's conclusion that he used either force or fear to accomplish the theft of Soto's car to elevate the crime to carjacking.

The factor of violence—or the threat thereof—is especially germane.  "[C]arjacking is a particularly serious crime that victimizes persons in vulnerable settings and, because of the nature of the taking, raises a serious potential for harm to the

7

victim . . . ." (*People v. Antoine* (1996) 48 Cal.App.4th 489, 495; accord, *People v. Hill* (2000) 23 Cal.4th 853, 859.) As with robbery, a "serious potential for harm . . . exists whenever there is a confrontation between the taker of a vehicle and the victim, 'and in no way depends on whether the confrontation and use of "force or fear" occurs before, while, or after the defendant initially takes possession of the vehicle.' " (*People v. O'Neil* (1997) 56 Cal.App.4th 1126, 1133.)

Washington correctly observes there is no evidence he exerted force to complete the carjacking. He did not engage in a struggle or have physical contact with Soto or her brother. Nor is there evidence that Soto took steps to deter or prevent Washington from taking the keys. Washington maintains that Soto's brother merely handed over the keys when asked to do so. Washington also observes that, in closing, the prosecutor did not assert that he used force to execute the carjacking, but merely implied that Washington employed fear to execute the carjacking, particularly the presence of a rifle, to overcome Soto's will and take her car.

Washington's argument ignores the deferential standard of review. Reviewing the record as a whole and in favor of supporting the conviction, we conclude substantial evidence supports the jury's conclusion that Washington accomplished the felonious taking of Soto's Volkswagen "by means of . . . fear." (§ 215, subd. (a).) In the context of robbery, fear means " 'sufficient fear to cause the victim to comply with the unlawful demand for his property.' " (*Morehead, supra*, 191 Cal.App.4th at p. 774.) "[F]ear may be caused by express threats, by the display of a weapon, or by intimidation alone." *People v. Collins* (2021) 65 Cal.App.5th 333, 340–341.) The prosecution must prove

" ' " 'that the victim was in fact afraid, and that such fear allowed the crime to be accomplished.' " ' " (*People v. Montalvo* (2019) 36 Cal.App.5th 597, 612, italics omitted; *Mungia, supra*, 234 Cal.App.3d at p. 1709, fn. 2.) However, such subjective fear may be proven circumstantially, by inferring the victim's fear "from the circumstances in which a crime is committed or property is taken." (*People v. Holt* (1997) 15 Cal.4th 619, 690.)

Under the circumstances, the jury could reasonably have inferred that Soto feared Washington would shoot or otherwise harm her or her family if she refused his demand. (*People v. Wright* (1996) 52 Cal.App.4th 203, 210 [constructive force for robbery includes force, not actual or direct, exerted on a victim by operating on a fear of injury].) "So long as the perpetrator uses the victim's fear to accomplish the retention of the [vehicle], it makes no difference whether the fear is generated by the perpetrator's specific words or actions designed to frighten, or by the circumstances surrounding the taking itself." (*Flynn, supra*, 77 Cal.App.4th at p. 772.) Soto was alone in her residential neighborhood in the early morning, when she was approached by two individuals–presumably in a rush, having just fled the scene of a shooting. The man was armed with a rifle. Soto lived with her elderly relatives, one of whom was infirm. A reasonable inference may be drawn that Soto froze in fear when Washington first demanded her keys. It may also reasonably be inferred that, still fearful for herself or her family, Soto took no action after following the armed man inside her home where he again demanded the keys. From this evidence it may be deduced that Soto remained fearful throughout the interaction, and her failure to act or to refuse Washington's demand demonstrates, rather than negates, her fearfulness.

9

Washington instilled fear in his victim to accomplish the taking just as surely as if he verbalized the threats inherent in the surrounding circumstances. His brazen demands and unauthorized entry into Soto's home while armed with a rifle revealed his confidence in the powerlessness of the victim. The fact that Washington was armed and his persistent demanding behavior throughout the incident, coupled with the reaction of Soto, who reasonably feared serious harm might be inflicted on her or her family if she did not comply, permitted the jury to conclude Washington employed fear to take Soto's car. To prove the " 'use of fear to facilitate the taking,' " the victim may " 'explicitly testify that he or she was afraid,' " or " 'there must be evidence from which it can be inferred that the victim was in fact afraid, and that such fear allowed the crime to be accomplished." (*Davison, supra*, 32 Cal.App.4th at p. 212.) We think a brusque demand for keys by an armed man carries with it a manifest implied threat of harm should the victim fail to comply.

*Davison* is instructive. *Davison* found harmless an instructional error misdefining the fear element of robbery because the evidence of fear was compelling. The evidence showed two men approached a female victim at night at an ATM and told her calmly but firmly to stand back. The victim believed she was being robbed, and responded by immediately stepping back from the ATM. She followed the robbers' instructions because she felt they meant business and did not know if they would hit her or pull out a weapon. The incident took only seconds. (*Davison, supra,* 32 Cal.App.4th at pp. 216–217.) *Davison* found this evidence was of such compelling force as to prove beyond a reasonable doubt that the erroneous instruction was harmless, in that the jury could not have failed to have found

10

the requisite fear. (*Ibid.*) Similarly here, confronted by an armed man in a rush and his companion, Soto was unable or chose to take no action, understanding Washington meant business and for fear of being harmed. As in *Davison*, the facts strongly suggest that Washington obtained the vehicle by means of fear.

It is true Soto did not testify whether or not she feared Washington. However, a victim need not explicitly testify that he or she was afraid in order to prove the element of fear, as long as there is evidence from which it can be inferred the victim was afraid and, because of that fear, allowed the crime to be accomplished. (*Davison, supra*, 32 Cal.App.4th at p. 212.) Here, a reasonable inference from the evidence was that Soto feared Washington would hurt her or her family and, for that reason, did not resist or try to stop him from stealing her car. Indeed, there would have been no reason for Soto first to freeze and then to follow an armed man into her home where her family waited unless she was afraid of such harm. Under these circumstances, the fact that Soto did not specifically testify about fear does not require a finding of insufficiency. We are not free to reject a jury's determinations of credibility unless the testimony is inherently improbable. (*People v. Navarro* (2021) 12 Cal.5th 285, 302.) "[C]onfusion or lack of clarity on the part of a witness does not make that witness's testimony inherently improbable." (*People v. Myers* (1981) 125 Cal.App.3d 735, 745, fn. 4, disapproved on another ground in *People v. Wolcott* (1983) 34 Cal.3d 92, 101.) The evidence does not reasonably support the interpretation that defendant engaged in theft without intending to instill (and instilling) fear. Washington's use of intimidation was established by his conduct and the circumstances of the crime. Indeed, whether Washington intended to instill fear is not

11

germane.  Although the taking must be accomplished by force or fear, the defendant need not have intended the victim to experience force or fear—only to deprive the victim of the property permanently.  (*People v. Anderson* (2011) 51 Cal.4th 989, 995–996.)

A reasonable jury could conclude that Soto had no way to know what an armed man might do if she resisted his demand.  Her passivity showed she viewed Washington's armed presence and demand as an implicit threat he might harm her or her vulnerable family.  The evidence supports a conclusion that Washington's demands engendered actual and reasonable fear in Soto.

On these facts, Washington employed fear to accomplish the carjacking just as surely as if he had verbalized the threats inherent in the surrounding circumstances.  Washington's argument listing the actions Soto did not take to resist ignores the fact that his confrontation of Soto and display of the weapon immediately changed what may otherwise have been a less frightening incident into one in which the victim had significant fear.  To the extent it was Soto's perception of the vulnerable nature in which she and her family were placed that caused the fear, those perceptions were reasonable, and the jury could infer that Washington took advantage of them in a calculated fashion.  Reasonable inferences drawn from this record demonstrate that Washington intimidated the victim, who was flanked by an armed man and his accomplice in a hurry to flee.  Substantial evidence supports the jury's finding that fear was used to facilitate the carjacking.

## DISPOSITION

The judgment is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

STRATTON, P. J.

We concur:

WILEY, J.

VIRAMONTES, J.

13