[No. C020395. Third Dist. Dec. 13, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
CHEVAL SHANNON WRIGHT et al., Defendants and Appellants.

**[Opinion certified for partial publication.[1]]**

---

[1]Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication except for parts I, II, III.B, IV, V and VI.

**COUNSEL**

Cliff Gardner, under appointment by the Court of Appeal, and Jeffrey J. Stuetz for Defendants and Appellants.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Edmund D. McMurray and Margaret Venturi, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**DAVIS, J.**—A jury convicted defendants Cheval Shannon Wright and Christian Matthew Abernathy of a number of offenses, the most significant of which was first degree murder committed in the course of a robbery or attempted robbery. It found defendant Wright was a principal armed with a handgun that he personally used. As for defendant Abernathy, it rejected allegations he was a principal armed with a handgun or personally used a firearm in the commission of the crime. (Pen. Code, §§ 187-189, 190.2, subd. (a)(17)(i), 12022, subd. (a), 12022.5, subd. (a) [undesignated section

references will be to this code].) Sentenced to state prison for the remainder of their lives (and then some), the defendants appeal.

In connection with the underlying offenses, both defendants contend the trial court should have granted a motion for severance, defendant Wright argues the trial court should have excluded an apology letter he wrote to the victim's family, both defendants fault the trial court for failing to charge the jury properly with instructions on lesser offenses, and defendant Abernathy argues the instructions improperly allowed the jury to find him guilty of murder as a consequence of attempted robbery. With respect to the special circumstance finding, defendant Abernathy complains the trial court erred by failing to define one element, trial counsel blundered by failing to request instructions relating intoxication to another element, and the evidence is insufficient to sustain the finding. As for sentencing, defendant Wright attacks the constitutionality of his punishment, defendant Abernathy highlights two flaws in the trial court's calculation of his prison term, and both defendants purport to challenge the validity of their restitution fines.

In the published section of the discussion, we reject their argument that they were entitled to instructions on assault as a lesser included offense of robbery. We find the remainder of their contentions without merit in the unpublished portion. We thus shall affirm.

FACTS

The parties have described in detail the testimony of the various witnesses at the lengthy trial. However, it is sufficient for our purposes to present only a brief summary of the facts to provide context. We will incorporate in the discussion any additional facts pertinent to the defendants' arguments.

Victim Moore was driving his Oldsmobile convertible on the afternoon of April 25, 1993, with three passengers. Victim Brown was in the back. As Moore turned left onto the street where his female passenger lived (in the vicinity of Watt Avenue and A Street), a Hyundai was sitting at the stop sign. Neither he nor his female passenger recognized the car or its occupants. He drove down the street and began making a wide U-turn to park on the other side of the street. He noticed the Hyundai had made a U-turn and was coming toward him. It pulled in front of him before he completed his U-turn, blocking his way.

Defendants Wright and Abernathy (also known as "Joker" and "Snoop") were passengers in the Hyundai. The five occupants of the Hyundai had been drinking and smoking marijuana throughout the day, and were on a trip to

buy more alcohol when they crossed paths with the Oldsmobile occupants. Although defendant Wright had brought the car, he made someone else drive on this trip because he was too drunk and high; the other Hyundai occupants testified he appeared intoxicated. Two of the other Hyundai occupants (the third "wasn't paying attention") and another drinking companion also described defendant Abernathy as intoxicated. Both defendants claimed at trial as well that by the time they encountered the Oldsmobile, they felt intoxicated.

As summarized in defendant Abernathy's brief, "two people got out of the Hyundai and approached the Oldsmobile. After a brief exchange of words [which the Oldsmobile occupants took as a demand for money], one drew a gun and fired, killing [victim Brown] and injuring [victim Moore]. [¶] The prosecutor called seven eyewitnesses to testify to the events of that afternoon. All basically agreed to the above series of events. Five testified that Wright was the shooter[,] . . . two recall[ing] that Abernathy was standing near Wright and was actually trying to stop Wright from shooting. [The sixth eyewitness] reversed the identities, testifying that Abernathy was the shooter and that Wright did everything in his power to try and stop the shooting. Finally, [the seventh eyewitness] testified that he was not sure who did what to whom."

As might be expected, each defendant claimed the other was the shooter. Each also claimed the incident was not pursuant to any prearranged plan. Defendant Abernathy admitted he was a gang member who regularly carried a gun. He claimed, however, that he approached the Oldsmobile with his gun at his side without any intention to use it and never pointed it at anybody; an Oldsmobile occupant corroborated his account. Defendant Wright claimed defendant Abernathy got out of the car with a gun; he followed to prevent anything from happening. He had not been aware defendant Abernathy was even carrying a gun. Defendant Wright denied he ever possessed a gun on that afternoon. After defendant Wright was unsuccessful in attempting to disarm defendant Abernathy at the Oldsmobile, defendant Abernathy shot at the victims. By its felony-murder verdicts, the jury apparently believed defendant Wright was the shooter and both defendants intended to participate in a robbery of the occupants of the Oldsmobile.

## DISCUSSION

### I., II.*

. . . . . . . . . . . . . . . . . . . . . . . .

*See footnote 1, *ante,* page 203.

### III. *Instructions on lesser offenses*

In addition to finding the defendants guilty of murder, the jury convicted them both of being armed principals in the attempted robbery of victim Brown while personally using a firearm; convicted defendant Wright of being an armed principal who attempted to murder victim Moore while personally using a firearm; convicted defendant Abernathy of the lesser offense of assault with a deadly weapon of victim Moore; and found both were armed principals in the robbery of victim Moore while personally using guns. Defendant Abernathy, joined by defendant Wright without elaboration, claims the trial court was obligated to instruct the jury on its own motion of the option of convicting them of assault as a lesser included offense of robbery, and should have more broadly defined the scope of unlawful acts on which the jury could rest a conviction of involuntary manslaughter as a lesser included offense of murder.

### A. *Robbery and assault*

#### 1. *General principles*:

■ To determine whether an offense is a lesser included offense of another for purposes of section 1159,[13] the Supreme Court adopted a two-part test at the behest of the People in *People* v. *Marshall* (1957) 48 Cal.2d 394, 398, 405 [309 P.2d 456].) In a more recent restatement, "An uncharged crime is included in a greater charged offense if *either* (a) the greater offense [as defined by statute] cannot be committed without committing the lesser, or (b) the language of the accusatory pleading encompasses all the elements of the lesser offense." (*People* v. *Wolcott* (1983) 34 Cal.3d 92, 98 [192 Cal.Rptr. 748, 665 P.2d 520], italics added.) The first, or "legal elements" test, determines whether as a matter of law the legal definition of the greater offense necessarily includes the lesser. (*People* v. *Moses* (1996) 43 Cal.App.4th 462, 466-467 [50 Cal.Rptr.2d 665].) Under the second, or "accusatory pleading" test, we review the information to determine whether the accusatory pleading describes the crime in such a way that if committed in the manner described the lesser must *necessarily* be committed. (*Id.* at pp. 469-470.) The evidence actually introduced at trial is irrelevant to the determination of the status of an offense as lesser included. (*In re Hess* (1955) 45 Cal.2d 171, 174-175 [288 P.2d 5].)

A trial court is obligated to instruct on lesser included offenses sua sponte if there is substantial evidence all the elements of the charged offense are not

---

[13]The statute provides, "The jury . . . may find the defendant guilty of any offense, the commission of which *is necessarily included in that with which he is charged* . . . ." (§ 1159, italics added.)

present. (*People v. Barton* (1995) 12 Cal.4th 186, 194-195 [47 Cal.Rptr.2d 569, 906 P.2d 531].) Thus, the trial evidence *is* relevant in determining whether a duty to instruct sua sponte arises.

### 2. *The present case:*

 The defendants assert that under the circumstances of this case, assault is a lesser offense included in robbery.[14] Because (as the Attorney General concedes) there is substantial evidence of the defendants' intoxication at the time of the charged offenses, this would (if believed) negate the specific intent to steal necessary for robbery (see *People v. Visciotti* (1992) 2 Cal.4th 1, 67 [5 Cal.Rptr.2d 495, 825 P.2d 388]) but not the general intent required for assault (§ 22, subd. (b); *People v. Colantuono* (1994) 7 Cal.4th 206, 215-216 [26 Cal.Rptr.2d 908, 865 P.2d 704]). The defendants thus argue the trial court erred in failing to instruct sua sponte on assault as a lesser included offense.

"[N]umerous California cases have asserted generally that robbery is a combination of assault and larceny. . . . Such language may serve as a thumbnail description of robbery, but it lacks the precision and exactness required in determining whether one offense is necessarily included in another." (*People v. Wolcott, supra,* 34 Cal.3d pp. 98-99.)[15]

The defendants concede assault is not a lesser included offense of robbery under the statutory elements test. By statute, a robbery may be committed by a taking from the person of another by means of force *or* fear. (§ 211.) Because a robbery can thus be committed strictly by frightening a victim into surrendering property, this would not necessarily include assault, which requires an unlawful attempt to apply physical force and a present ability to apply such physical force. (*People v. Wolcott, supra,* 34 Cal.3d at pp. 99-100; *People v. Hays* (1983) 147 Cal.App.3d 534, 541 [195 Cal.Rptr. 252].) There is consequently no duty to instruct sua sponte on assault as a lesser included offense of robbery as the two are defined.[16]

Here, however, the prosecution charged that the defendants "unlawfully, and by means of force *and* fear attempt[ed] to take personal property from

---

[14]That defendant Wright actually completed his attempt to inflict injury would not preclude his conviction of assault. (1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Crimes Against the Person, § 398, pp. 461-462.)

[15]The Supreme Court then promptly used this thumbnail description in the subsequent case of *People v. Collins* (1986) 42 Cal.3d 378, 395 [228 Cal.Rptr. 899, 722 P.2d 173]: "Robbery is . . . larceny aggravated by an assault . . . and is likewise a felony that necessarily involves moral turpitude."

[16]A number of cases, by contrast, recognize a defendant is entitled to assault instructions *on request* where charged with robbery if the evidence warrants. (*People v. Carter* (1969) 275 Cal.App.2d 815, 823-24 [80 Cal.Rptr. 202]; *People v. Duncan* (1945) 72 Cal.App.2d 423, 426 [164 P.2d 510]; *People v. Driscoll* (1942) 53 Cal.App.2d 590, 593 [128 P.2d 382].)

the person of . . . BROWN" and "unlawfully, and by means of force *and* fear [took] personal property from the person of . . . MOORE." (Italics added.) Thus, *as charged*, the robbery and attempted robbery were *necessarily* accompanied by force. As a result, the $64,000 question—one which the Supreme Court has assumed was of merit but has not reached (*People* v. *Bacigalupo* (1991) 1 Cal.4th 103, 127 [2 Cal.Rptr.2d 335, 820 P.2d 559])— is whether the force required to commit a robbery necessarily includes the force required to commit an assault, which would make assault a lesser included offense by virtue of the "accusatory pleading" test.

■ Courts have recognized that the "force" required for robbery is not necessarily synonymous with a physical corporeal assault. (*People* v. *Mungia* (1991) 234 Cal.App.3d 1703, 1708 [286 Cal.Rptr. 394].) An assault consists of an attempt coupled with the present ability to inflict an "injury" unlawfully on another; this "injury" can be the least unwanted touching.[17] (*People* v. *Colantuono*, *supra*, 7 Cal.4th at p. 214 & fn. 4.) When *actual* force is present in a robbery, at the very least it must be a quantum more than that which is needed merely to take the property from the person of the victim, and is a question of fact to be resolved by the jury taking into account the physical characteristics of the robber and the victim. (*Mungia*, *supra*, 234 Cal.App.3d at p. 1709; *People* v. *Morales* (1975) 49 Cal.App.3d 134, 139 [122 Cal.Rptr. 157].) The force need not be applied directly to the person of the victim. (*People* v. *Harris* (1977) 65 Cal.App.3d 978, 981, 989 [135 Cal.Rptr. 668] [pushing jewelry case lid open while victim tried to push it shut].) If "force" for purposes of robbery meant no more than the direct (or indirect) application of physical might to the person of the victim, then we would agree that an assault is necessarily included any time a prosecutor alleges a robbery was committed by means of force. "Force," however, has a broader meaning.

Generally, "the force by means of which robbery may be committed is either actual or constructive. The former includes all violence inflicted directly on the persons robbed; the latter encompasses all . . . means by which the person robbed is put in fear sufficient to suspend the free exercise of . . . will or prevent resistance to the taking." (67 Am.Jur.2d, Robbery, § 22, p. 77.) This "constructive force" means "force, not actual or direct, exerted upon the person robbed, by operating upon [a] fear of injury . . . ." (*Id.*, § 24, p. 79.) The Supreme Court has held that "force" has no technical meaning which must be explained to jurors. (*People* v. *Anderson* (1966) 64 Cal.2d 633, 640 [51 Cal.Rptr. 238, 414 P.2d 366].) Included within the

---

[17]A defendant can commit a battery indirectly by causing the force to be applied to the person of another (1 Witkin & Epstein, Cal. Criminal Law, *supra*, Crimes Against the Person, § 404(2), p. 467) and thus can be guilty of indirect assault as well.

common meaning of "force" is "such *threat* or *display* of physical aggression toward a person as *reasonably inspires fear* of pain, bodily harm, or death." (Webster's New Internat. Dict. (3d ed. 1981) p. 887, italics added.)

 As we have noted, "force" is not an element of robbery independent of "fear"; there is an equivalency between the two. " '[T]he coercive effect of fear induced by threats . . . is in itself a form of force, so that either factor may normally be considered as attended by the other.' " (*People* v. *Brookins* (1989) 215 Cal.App.3d 1297, 1309 [264 Cal.Rptr. 240].)

Thus, in a case where the information pled robbery in the conjunctive and the defendant claimed there was insufficient evidence of both elements, we held that pointing a handgun at a victim and demanding money is direct evidence of force and is "inferably" evidence of the victim's fear. (*People* v. *LeBlanc* (1972) 23 Cal.App.3d 902, 908-909 [100 Cal.Rptr. 493].) Notably absent from this statement of the evidence supporting the implied finding of force is any indication of an attempt to apply physical force rather than frighten, or any indication the handgun was loaded (and thus had the present ability to apply force when used as a gun).

 Since the element of force can be satisfied by evidence of fear, it is possible to commit a robbery by force without necessarily committing an assault. Consequently, under the "accusatory pleading" test, assault is not necessarily included when the pleading alleges a robbery by force. As a result, the trial court had no duty to instruct sua sponte on assault as a lesser included offense of robbery even though there was evidence of intoxication.

B. *Murder and manslaughter**

. . . . . . . . . . . . . . . . . . . . . . . . .

IV.-VI.*

. . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is amended to stay sentence on defendant Abernathy's conviction for the attempted robbery of victim Brown and its concomitant

*See footnote 1, *ante*, page 203.

gun-use enhancement. As so modified, the judgments are affirmed. The trial court shall prepare an amended abstract of judgment for defendant Abernathy and forward it to the Department of Corrections.

Puglia, P. J., and Sims, J., concurred.

A petition for a rehearing was denied January 9, 1997, and appellants' petition for review by the Supreme Court was denied March 26, 1997.