Filed 10/28/15  P. v. Fullbright CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

<table>
<tr><td>THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>NORMAN LIONEL FULLBRIGHT,<br><br>    Defendant and Appellant.</td><td>D067560<br><br><br>(Super. Ct. No. JCF32695)</td></tr>
</table>

APPEAL from a judgment of the Superior Court of Imperial County, William D. Lehman, Judge.  Affirmed and reversed in part, and remanded for sentencing.

Richard Schwartzberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Annie Featherman Fraser, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Norman Fullbright is an inmate at Calipatria State Prison (Calipatria). He was convicted after a jury trial of battering correctional officers Diane Fernandez, Jack Sigler, Richard Romero, and Leo Garza in violation of Penal Code[1] section 4501.5.

Fullbright argues that count 1 is not supported by substantial evidence because the evidence did not show that he directly struck, or caused someone else to strike, Fernandez, the victim of this count. We agree, and will reverse the judgment as to count 1.

FACTS AND PROCEDURAL HISTORY

Count 1

On June 4, 2012, correctional officer Diane Fernandez was assigned to supervise the law library at Calipatria. There were approximately 21 inmates using the library, including Fullbright. Fullbright began using computer workstation number one at 11:00 a.m. At this time, all three of the computer stations were occupied, resulting in enforcement of a one-hour time limit per inmate, per computer.

At noon Fernandez told Fullbright that his time had expired. Fullbright did not respond. Fernandez walked away to give Fullbright a few minutes to gather his belongings. Fernandez returned and for a second time instructed Fullbright that his time was up and another inmate was waiting to use the computer. Again, Fullbright did not respond. Fernandez then walked around to the front of the computer workstation and told Fullbright his time was up. Fullbright responded by yelling out, "What the [expletive] do

---

1      All further statutory references are to the Penal Code unless otherwise specified.

2

you want me to do?" Fernandez ordered Fullbright to exit the workstation. Fullbright then threw his arms up in the air towards Fernandez and screamed, "[Expletive] this!"

Fearing the situation was escalating, Fernandez activated the personal alarm carried on her belt and ordered all inmates to get down, or prone, on the floor. All inmates complied except for Fullbright. Fullbright jumped up and ran into the inmate bathroom located two feet from the computer workstation. Correctional officers Romero and Elmore arrived at the library to respond to Fernandez's alarm. At this time, Fullbright ran out from the bathroom and stood at the front counter. From where he was standing, Fullbright was approximately three feet from the officers when they simultaneously instructed him to get down on the ground. When Fullbright again refused to comply with orders to get prone on the floor, Romero applied his pepper spray to Fullbright's facial area. Fullbright reacted by running toward Romero and punching Romero in the back and face.

After seeing Fullbright strike Romero, Fernandez also applied her pepper spray to Fullbright's facial area. At that point, Fernandez felt a strike to her left cheek, however she did not see who or what struck her. Fernandez pulled out her expandable baton and struck Fullbright on the lower leg. Additional officers rushed in to assist as Fernandez was overcome with pepper spray and unable to open her eyes. Fernandez was helped out of the library by two officers and received medical attention for her injuries.

Count 2

Jack Sigler was a correctional officer lieutenant at Calipatria. Sigler arrived at the library within 40 seconds of hearing Fernandez's alarm. Once in the library, Sigler saw

3

officers Fernandez, Elmore, Romero and Garza ordering Fullbright to get down on the ground. All other inmates were already down on the floor. Fullbright was refusing to comply with the order. From where he was standing in the doorway of the library, Sigler saw Romero use pepper spray on Fullbright, who then lunged back at Romero. Romero and Fullbright engaged in a fistfight. Additional officers pepper sprayed Fullbright. Due to the volume of pepper spray deployed, Fullbright managed to get away from officers who had slipped and fallen in the pepper spray. Fullbright encountered Sigler in the doorway as he was trying to exit the library. Fullbright struck Sigler in the forehead. Sigler hit Fullbright back and the two engaged in a fistfight. Additional officers arrived and a .40 millimeter foam round was fired at Fullbright, which had no impact. Sigler received medical attention for a split lip.

## Count 3

Richard Romero was a correctional officer at Calipatria. Romero arrived at the library within five seconds of hearing Fernandez's alarm. Romero entered the library and saw Fernandez ordering Fullbright to get on the ground. All other inmates were already on the ground in the prone position. Fullbright ignored Fernandez's commands, asserting that he had "rights." Romero joined Fernandez in ordering Fullbright to get down on the ground, but his command was also ignored.

Romero pepper sprayed Fullbright in the face and torso. Fullbright ran directly at Romero striking him four to five times in the face. Romero tried to turn away from Fullbright but tripped and fell onto a library table. While Romero was down, Fullbright continued to strike him three to four more times on the back of his head and shoulders.

4

Romero then saw Fullbright attempting to exit the library and tried to stop him. Romero attempted to forcibly take Fullbright to the ground by putting his arm around Fullbright's neck, but due to the saturation from the pepper spray, Fullbright slipped out of Romero's grasp. Romero lost the ability to see because he was overcome with pepper spray and backed off pursuing Fullbright. Romero was escorted out of the library by another officer and received medical attention for his injuries.

Count 4

Leo Garza was a correctional officer at Calipatria. Garza heard and responded to Fernandez's alarm. When Garza arrived at the library, he saw Fullbright standing at the library counter next to Fernandez. Garza saw Fernandez command Fullbright to get on the ground multiple times. Each time Fullbright ignored the command. Garza and Romero, who were standing just inside the library door, gave Fullbright one more command to prone on the floor. Fullbright continued to refuse to get down and mumbled something under his breath. Romero then sprayed Fullbright with pepper spray. In response, Fullbright rushed at Romero and Garza and started swinging his arms. Fullbright struck Romero three or four times in the face. Fullbright also struck Garza twice in the face. Fullbright continued swinging his arms, and additional officers responded by deploying more pepper spray. Garza was overcome by pepper spray and was pulled out of the library by other officers. Garza received medical attention for his injuries.

Fullbright was charged in counts 1 through 4 with battery of a nonconfined person by a prisoner in violation of section 4501.5. The jury was instructed with CALCRIM No.

2723, which explains that the touching can be done indirectly by causing an object to touch the other person, and that the slightest touching can constitute a battery. (See *People v. Myers* (1998) 61 Cal.App.4th 328, 335.) The jurors returned verdicts finding Fullbright guilty as to all four counts of battery on a nonconfined person by a prisoner. In a bifurcated trial, the court found true that Fullbright had a prior conviction for violation of section 1170.12, subdivisions (a) through (d) and section 667, subdivisions (b) through (i). Fullbright was sentenced to 14 years in state prison, consecutive to his current life term (strike prior). Fullbright now appeals the conviction as to count 1, the battery on Fernandez.

DISCUSSION

"In determining whether a judgment is supported by substantial evidence, we may not confine our consideration to isolated bits of evidence, but must view the whole record in a light most favorable to the judgment, resolving all evidentiary conflicts and drawing all reasonable inferences in favor of the decision of the trial court. [Citation.] We may not substitute our view of the correct findings for those of the trial court; rather, we must accept any reasonable interpretation of the evidence which supports the trial court's decision." (*Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1203.) However, we may not defer to that decision entirely. "[I]f the word 'substantial' means anything at all, it clearly implies that such evidence must be of ponderable legal significance. Obviously the word cannot be deemed synonymous with 'any' evidence. It must be reasonable in nature, credible, and of solid value; it must actually be 'substantial' proof of the essentials which the law requires in a particular

6

case."  (*Estate of Teed* (1952) 112 Cal.App.2d 638, 644.)  "Furthermore, '[w]hile substantial evidence may consist of inferences, such inferences must be "a product of logic and reason" and "must rest on the evidence" [citation]; inferences that are the result of mere speculation or conjecture cannot support a finding [citations].'  [Citation.]  'The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record.' "  (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393-1394; italics omitted.)

I

*COUNT 1 IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE*

Fullbright argues that count 1 (the assault on Fernandez) is not supported by substantial evidence because there is no evidence that it was Fullbright who struck, or caused someone else to strike, Fernandez.  Fullbright contends the evidence is insufficient that he committed a battery on Fernandez because Fernandez did not testify that Fullbright struck her; rather she testified that during the melee, she felt a strike to her cheek.  The Attorney General asserts there is sufficient evidence to conclude that Fullbright battered Fernandez, either directly or indirectly.  In response, Fullbright argues there is an absence of any evidence from which jurors could reasonably conclude that it was Fullbright who directly or indirectly caused the battery.  Fullbright is correct.

The Attorney General argues that a defendant can commit a battery indirectly by intentionally causing the force to be applied to another object or person.  (*People v. Wright* (1996) 52 Cal.App.4th 203, 210, fn. 17 ["A defendant can commit a battery indirectly by causing the force to be applied to the person of another [citation]."].)  We

7

agree with this sound principle. However, Fullbright's "claim of insufficient evidence requires us to determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*People v. Frye* (1998) 18 Cal.4th 894, 953.) We conclude it could not.

The elements of a violation of section 4501.5 are: (1) The defendant was confined in a state prison; (2) while confined, the defendant willfully touched the victim in a harmful or offensive manner; and (3) the victim was not confined in a state prison. (*People v. Flores* (2009) 176 Cal.App.4th 924, 930, citing CALCRIM No. 2723.) Section 4501.5 is often thought of as battery committed in prison, by a prisoner, against a nonprisoner.

The Attorney General is correct that a battery[2] can be committed indirectly. However, indirect battery needs to arise from facts which the prosecution can establish, and until the prosecution has established the requisite facts, the cause of the indirect battery remains mere speculation. In this case, the record shows there was a melee in the computer room, and as a result, four correctional officers were injured. Three of the four officers testified to the exact means in which they were hit, and were able to conclusively identify Fullbright as the person who hit them. In contrast, the fourth officer, Fernandez, testified that she did not know who, or what, caused the strike to her cheek. In addition, none of the other officers testified about who or what struck Fernandez. Therefore we have no direct or circumstantial evidence as to how the battery on Fernandez occurred.

_____

[2] The crime of battery is the willful and unlawful use of force or violence upon the person of another (§ 242).

8

In this case, the jury may have inferred that because Fullbright started the melee, he was responsible for every battery to a correctional officer that resulted. However, from the facts, no reasonable inference can be made as to the mechanism with which Fernandez was hit, or even who hit her. While the law permits a judgment to be supported by an inference, the inference must be a reasonable conclusion from the evidence and cannot be "based on suspicion, imagination, speculation, surmise, conjecture or guesswork." (*Krause v. Apodaca* (1960) 186 Cal.App.2d 413, 418; see *Marshall v. Parkes* (1960) 181 Cal.App.2d 650, 655 [where the evidence is such that it is a matter of conjecture whether a particular deduction is warranted from the facts which are known, there is no basis for a legally sufficient inference].)

Although proof of the elements of battery may be by direct or circumstantial evidence, it must be "substantial" evidence, and evidence "which leaves the determination of these essential facts in the realm of mere speculation and conjecture is insufficient." (*Showalter v. Western Pacific R.R. Co.* (1940) 16 Cal.2d 460, 471.) Here, there is a missing link between Fullbright's activity and the force applied to Fernandez. Fernandez's testimony is insufficient to establish beyond a reasonable doubt that it was Fullbright who willingly committed the act that applied force to her cheek. Therefore, there is simply no evidence from which to infer that it was Fullbright who willfully touched Fernandez in a harmful or offensive manner, either directly or indirectly. We cannot allow a criminal conviction for battery to be based upon pure speculation that such a nexus exists.

Before we can reverse the judgment for insufficiency of the evidence, "it must clearly appear that upon no hypothesis whatever is there sufficient substantial evidence to support it." (*People v. Redmond* (1969) 71 Cal.2d 745, 755.)  That is the state of the record here.  We cannot infer that because Fullbright started the melee, he was responsible for every bad act resulting therefrom.  An inference must logically flow from the facts in evidence, and here there is a complete absence of evidence indicating how the battery to correctional officer Fernandez occurred.  The prosecution did not meet its burden of establishing every element of the offense beyond a reasonable doubt.  Accordingly, we conclude there is insufficient evidence to support Fullbright's conviction as to count 1.

### DISPOSITION

The conviction on count 1 is reversed.  The case is remanded to the trial court for resentencing.  In all other aspects, the judgment is affirmed.

HUFFMAN, Acting P. J.

WE CONCUR:

HALLER, J.

AARON, J.