Filed 7/7/16  P. v. Davis CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D068375 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN342040) |
| DIONNE DAVIS, | |
| Defendant and Appellant. | |
| THE PEOPLE, | D068651 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN342040) |
| MICHAEL SAIA, | |
| Defendant and Appellant. | |

CONSOLIDATED APPEALS from a judgment and order of the Superior Court of San Diego County, Sim von Kalinowski, Judge.  Judgment against Davis affirmed.  Order against Saia reversed with directions.

Christopher Love, under appointment by the Court of Appeal, for Defendant and Appellant Dionne Davis.

Robert Booher, under appointment by the Court of Appeal, for Defendant and Appellant Michael J. Saia.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., Ronald Jakob and Stacy Tyler, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Dionne Davis and Michael Saia of robbery. (Pen. Code, § 211.)[1] In bifurcated proceedings, the trial court found that Davis had suffered four probation denial priors under section 1203, subdivision (e)(4) and two prison priors under sections 667.5, subdivision (b) and 668. The court sentenced Davis to five years in prison. The court suspended imposition of Saia's sentence for three years and granted him formal probation conditioned on spending 365 days in local custody. The court prescribed various additional terms and conditions of Saia's probation, including a search condition encompassing Saia's electronic devices.

Davis and Saia appeal. They contend the court erred by not instructing the jury on the lesser included offenses of battery (Davis and Saia) and assault (Saia only). Saia additionally contends his electronic search condition is invalid under *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*) and is unconstitutionally overbroad.

We conclude any error in failing to instruct the jury on battery and assault was harmless. We therefore affirm the judgment against Davis. However, we conclude the electronic search condition imposed as part of Saia's probation is unconstitutionally

---

[1] Further statutory references are to the Penal Code.

overbroad. We will therefore direct the trial court to strike the condition and remand for consideration of a more narrowly tailored condition.

FACTS

For purposes of this section, we state the evidence in the light most favorable to the appealed judgment and order. (See *People v. Osband* (1996) 13 Cal.4th 622, 690; *People v. Dawkins* (2014) 230 Cal.App.4th 991, 994.) Additional facts will be discussed where relevant in the following section.

On President's Day, February 16, 2015, Scott Ackley drank approximately 12 beers and went for an afternoon walk near the beach in Oceanside, California. While he was walking, Davis and Saia approached him. Saia asked if Ackley wanted to buy some marijuana. When Ackley declined, either Davis or Saia struck Ackley in the left temple. Davis then punched Ackley in the stomach, put him in a headlock, and dragged him behind a parked truck. As Davis and Ackley struggled, Saia went through Ackley's pockets and took his wallet.

A passing driver, Javier Williams, witnessed Davis and Saia fight with Ackley. Ackley looked afraid and surprised. Williams saw Saia ride away on a bicycle with Ackley's wallet in his hand. Ackley exclaimed "he has my wallet" several times. Ackley chased Saia, and Williams called police. Davis walked away and tried to blend into the crowd.

Police officers arrived and took statements from Ackley and Williams. While talking with police, Ackley said he got his wallet back. Ackley could not explain

precisely how he recovered his wallet; he believed someone handed it to him after police arrived. Nothing was missing from the wallet.

Police officers observed an injury to the side of Ackley's head. Ackley appeared dazed and disoriented from the fight and was feeling the effects of the beers he drank earlier. Ackley admitted his recollection of the day was "patchy."

Police officers tracked Saia to a nearby apartment complex, where he was changing his shirt. Saia ran away and hid in a stairwell. Police officers found Saia and detained him. Police found Davis nearby and detained her as well. Ackley and Williams positively identified Davis and Saia, and they were arrested.

At trial, defense counsel argued that Ackley and Williams had been inconsistent in their statements, which cast doubt on their testimony. They also pointed to evidence the police asked Ackley whether he had solicited Davis for sex. (Ackley said he did not recall.) They claimed this solicitation, not any motive for robbery, caused the altercation between Ackley and Davis.

## DISCUSSION

### I

On appeal, Davis and Saia contend the trial court erred by not instructing the jury on battery and assault as lesser included offenses of robbery. " ' "It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's

4

understanding of the case." [Citation.] That obligation has been held to include giving instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged.' " (*People v. Breverman* (1998) 19 Cal.4th 142, 154 (*Breverman*).) " 'On appeal, we review independently the question whether the court failed to instruct on a lesser included offense.' " (*People v. Avila* (2009) 46 Cal.4th 680, 705.)

"To determine whether a lesser offense is necessarily included in the charged offense, one of two tests (called the 'elements' test and the 'accusatory pleading' test) must be met." (*People v. Lopez* (1998) 19 Cal.4th 282, 288.) Davis and Saia argue the accusatory pleading test compels instructions on battery and assault as lesser included offenses of robbery under the circumstances here.[2] "Under the accusatory pleading test, a lesser offense is included within the greater charged offense ' "if the charging allegations of the accusatory pleading include language describing the offense in such a way that if committed as specified the lesser offense is necessarily committed." ' " (*Id.* at pp. 288-289.) In other words, "if the facts actually alleged in the accusatory pleading include all of the elements of the lesser offense[,]" the trial court is required to instruct on the lesser offense. (*People v. Bailey* (2012) 54 Cal.4th 740, 748.)

---

[2]    The Supreme Court has held that assault is not a lesser included offense of robbery under the elements test. (See, e.g., *People v. Parson* (2008) 44 Cal.4th 332, 349 ["Because a robbery can be committed strictly by means of fear, assault is not a lesser included offense of robbery under the elements test."].) As Davis concedes in her briefing, this logic leads to the same conclusion with respect to the crime of battery.

The accusatory pleading here contained the following allegation: "On or about February 16, 2015, [Davis] and [Saia] did unlawfully and by means of force and fear take personal property from the person, possession and immediate presence of Scott Ackley, in violation of [section 211]." Davis and Saia contend that the allegation they used "force" in connection with the robbery necessarily means they committed battery and assault as well. This logic was considered and rejected in *People v. Wright* (1996) 52 Cal.App.4th 203 (*Wright*). *Wright* reasoned that "force" in the context of robbery did not necessary mean physical force; it could be constructive force, i.e., fear. (*Id.* at pp. 210-211.) *Wright* explained, " 'force' is not an element of robbery independent of 'fear'; there is an equivalency between the two." (*Id.* at p. 211.) On that basis, *Wright* concluded that an allegation of robbery encompassing both "force" and "fear" did not warrant an instruction on assault as a lesser included offense: "Since the element of force can be satisfied by evidence of fear, it is possible to commit a robbery by force without necessarily committing an assault. Consequently, under the 'accusatory pleading' test, assault is not necessarily included when the pleading alleges a robbery by force." (*Ibid.*)

The Supreme Court has cited *Wright* twice on this issue, though it has not commented on *Wright*'s reasoning because it found in each case that no substantial evidence supported an instruction on the lesser included offense, even assuming the accusatory pleading test were satisfied. (*People v. O'Malley* (2016) 62 Cal.4th 944, 985; *People v. Parson, supra*, 44 Cal.4th at p. 350.) We likewise have no occasion in this case to consider the reasoning in *Wright*, though for a slightly different reason. We conclude

6

that even if the accusatory pleading test were satisfied, and even if substantial evidence supported a finding that Davis and Saia were guilty of battery or assault but not of robbery (see *People v. Casteneda* (2011) 51 Cal.4th 1292, 1327-1328), any error in failing to instruct the jury was harmless on the record presented here.

"In noncapital cases, 'the rule requiring sua sponte instructions on all lesser necessarily included offenses supported by the evidence derives exclusively from California law.' [Citation.] As such, 'in a noncapital case, error in failing sua sponte to instruct, or to instruct fully, on all lesser included offenses and theories thereof which are supported by the evidence must be reviewed for prejudice exclusively under [*People v.*] *Watson* [(1956) 46 Cal.2d 818, 836 (*Watson*)].' " (*People v. Beltran* (2013) 56 Cal.4th 935, 955 (*Beltran*).)[3] " '[U]nder *Watson*, a defendant must show it is reasonably probable a more favorable result would have been obtained absent the error.' " (*Ibid.*)

---

[3] Davis agrees the *Watson* standard applies. Saia, however, contends the instructional error here constitutes federal constitutional error, requiring a more stringent review for prejudice. But, as the Supreme Court explained in *Breverman*, "the United States Supreme Court has expressly refrained from recognizing a federal constitutional right to instructions on lesser included offenses in noncapital cases." (*Breverman, supra*, 19 Cal.4th at p. 165.) The error assumed here is therefore one of California law only, subject to the *Watson* standard of prejudice. (*Beltran, supra*, 56 Cal.4th at p. 955; *Breverman,* at p. 169.) Relying on *People v. Thomas* (2013) 218 Cal.App.4th 630, 643-644 (*Thomas*), Saia argues that the failure to instruct on lesser included offenses deprived him of his federal constitutional right to have the jury decide all elements of the charged offense. *Thomas* reasoned that the trial court's failure to instruct on voluntary manslaughter effectively removed the element of malice from the jury because it deprived the jury of instructions regarding the circumstances in which the element of malice could be negated. (*Id.* at p. 644.) No similar situation is presented here. The offenses of battery and assault do not represent exceptions to robbery, and the instructions regarding their elements do not affect the prosecution's burden of proof with respect to the elements of robbery. (See *People v. Ngo* (2014) 225 Cal.App.4th 126, 158,

As an initial matter, we note that the mere fact we assume substantial evidence supported the lesser included offense instructions (i.e., a reasonable jury *could* have found Davis and Saia guilty of battery or assault, but not of robbery) does not in and of itself establish prejudice. "[T]he *Watson* test for harmless error 'focuses not on what a reasonable jury *could* do, but what such a jury is *likely* to have done in the absence of the error under consideration. In making that evaluation, an appellate court may consider, among other things, whether the evidence supporting the existing judgment is so *relatively* strong, and the evidence supporting a different outcome is so *comparatively* weak, that there is no reasonable probability the error of which the defendant complains affected the result.' " (*Beltran, supra*, 56 Cal.4th at p. 956.)

Here, the evidence supporting the jury's verdict of robbery was overwhelming. Ackley, the victim, told police immediately after the altercation that Saia took his wallet. At trial, Ackley testified that he felt either Saia or Davis reach into his pocket and grab his wallet. Williams, a disinterested witness, corroborated Ackley's testimony. Williams told the jury he saw Saia going through Ackley's pockets and riding away on his bicycle with Ackley's wallet in hand. Williams heard Ackley exclaim, "He has my wallet," several times. After Ackley's wallet was returned, he said, "I got my wallet back." After hearing the evidence, the jury took only two hours to reach its verdict, showing that this was not a close case.

---

fn. 20 [distinguishing *Thomas* in the context of a different offense].) The *Watson* standard applies.

By contrast, the evidence supporting a finding that Saia and Davis committed only battery or assault, and not robbery, is meager at best. Saia points to Ackley's testimony that he was unsure who took his wallet and how he got it back. Saia also contends Ackley's intoxication calls his testimony about the wallet into question. But, as we have already noted, Ackley's testimony was in large part corroborated by Williams. The fact that both Ackley and Williams testified that Ackley's pockets were searched, and both Ackley and Williams testified that Ackley's wallet was taken, greatly reduces any doubt based on Ackley's intoxication. This intoxication, rather than any motive to lie, explains any gaps in Ackley's recollection of that day. Saia also claims there was evidence of a motive other than robbery. (Davis similarly claims the jury could have found she was unaware Saia planned to rob Ackley.) But such conclusions—based largely on the mere fact that the police *asked* Ackley whether he solicited Davis for sex—would be unwarranted given the other evidence in the record, which showed that Davis and Saia intended to, and did, rob Ackley of his wallet. The other alleged inconsistences in Ackley and Williams's statements are insignificant in light of the whole record.

Given the overwhelming evidence in support of the jury's verdict of robbery, and the comparatively meager evidence supporting a finding not of robbery but of battery or assault, Davis and Saia have not shown they would have achieved a more favorable result if the jury had been instructed on battery and assault. Any error was therefore harmless under *Watson*.

9

II

Saia argues the electronic search condition imposed as part of his formal probation is invalid under the Supreme Court's *Lent* test and is unconstitutionally overbroad. The condition requires Saia to "[s]ubmit [his] person, vehicle, residence, property, personal effects, computers, and recordable media . . . to search at any time with or without a warrant, and with or without reasonable cause, when required by [the probation officer] or law enforcement officer." (Italics added.) Saia contends the inclusion of "computers" and "recordable media" in the condition is improper. We conclude the court did not abuse its discretion in imposing the condition under *Lent* but, as the Attorney General concedes, the condition is unconstitutionally overbroad. We will therefore direct the trial court to strike the challenged portions of the condition and remand for consideration of a more narrowly tailored condition.

A

Under *Lent*, "[w]e review conditions of probation for abuse of discretion. [Citations.] Generally, '[a] condition of probation will not be held invalid unless it "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . ." [Citation.]' [Citation.] This test is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation term." (*People v. Olguin* (2008) 45 Cal.4th 375, 379 (*Olguin*), quoting *Lent, supra*, 15 Cal.3d at p. 486.)

10

The parties agree the first two prongs of the *Lent* test are satisfied in this case: (1) the electronic search condition has no relationship to Saia's crime, and (2) it relates to conduct that is not itself criminal. The dispositive issue here is therefore whether the electronic search condition requires or forbids conduct that is reasonably related to future criminality. The same issue, albeit involving a juvenile offender, is currently pending before the Supreme Court. (*In re Ricardo P.* (2015) 241 Cal.App.4th 676, review granted Feb. 17, 2016, S230923.)

The Supreme Court's opinion in *Olguin* is instructive. In that case, the Supreme Court considered a probation condition requiring the probationer to notify his probation officer of any pets in his residence and give 24 hours' notice prior to any changes. (*Olguin, supra*, 45 Cal.4th at p. 380.) The Supreme Court explained that "conditions of probation 'are meant to assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large. [Citation.] These same goals require and justify the exercise of supervision to assure that the restrictions are in fact observed.' " (*Ibid.*) As a general rule, "[a] condition of probation that enables a probation officer to supervise his or her charges effectively is, therefore, 'reasonably related to future criminality.' " (*Id.* at pp. 380-381.)

Against this backdrop, the Supreme Court found the probation condition at issue reasonable: "The condition requiring notification of the presence of pets is reasonably related to future criminality because it serves to inform and protect a probation officer charged with supervising a probationer's compliance with specific conditions of probation." (*Olguin, supra*, 45 Cal.4th at p. 381.) The Supreme Court reasoned that the

11

probation condition ensured the probation officer's safety when making unannounced visits to the probationer's residence. (*Id.* at pp. 381-382.) The Supreme Court concluded, "Reporting the presence of pets to a probation officer is a simple task, imposes no undue hardship or burden, and is a requirement that clearly falls within the bounds of reason." (*Id.* at p. 382.)

Pending guidance from the Supreme Court, the Courts of Appeal appear to be divided on the reasonableness of electronic search conditions under *Lent.  In re J.B.* (2015) 242 Cal.App.4th 749 (*J.B.*) found, for example, that an electronic search condition was unreasonable in the context of a juvenile offender.  (*Id.* at p. 757.)  *J.B.* distinguished *Olguin* and questioned the breadth of its general rule:  "The fact that a search condition would facilitate general oversight of the individual's activities is insufficient to justify an open-ended search condition permitting review of all information contained or accessible on the minor's smart phone or other electronic device."  (*J.B., supra*, 242 Cal.App.4th at p. 758.)  On the other hand, also in the juvenile context, *In re P.O.* (2016) 246 Cal.App.4th 288 (*P.O.*), held that such an electronic search condition was reasonable under *Lent*.  (*Id.* at p. 295.)  Following *Olguin*, *P.O.* held that the electronic search condition "reasonably relates to enabling the effective supervision of [the juvenile ward's] compliance with other probation conditions.  Specifically, the condition enables peace officers to review [the ward's] electronic activity for indications that [the ward] has drugs or is otherwise engaged in activity in violation of his probation."  (*Ibid.*)

We agree with *P.O.* and conclude that the trial court could reasonably impose the electronic search probation condition here.  The electronic search condition "enables a

probation officer to supervise [Saia] effectively" by allowing the probation officer access to Saia's electronic devices and recordable media. (See *Olguin, supra*, 45 Cal.4th at pp. 380-381; *P.O., supra*, 246 Cal.App.4th at p. 295.) By searching those devices and media, the probation officer can more effectively determine whether Saia is complying with the terms of his probation, including refraining from unlawful activity, not contacting the victim, not possessing a firearm or deadly weapon, and not using drugs or alcohol (if directed by the probation officer). In our view, the electronic search condition here is analogous to the standard "three-way" search condition—of a defendant's person, residence, and vehicles—routinely imposed as a condition of probation.[4] Both the three-way search condition and the electronic search condition allow for effective monitoring of a probationer's activities. Indeed, given the current ubiquity of electronic communications and interactions, an electronic search condition may well be the only way for a probation officer to discover the bulk of the information relevant to a probationer's compliance with probation conditions. A probationer engaged in illegal activities, for example, is much more likely to have digital photographs or communications relating to such activities stored on an electronic device than print photographs and written correspondence stored at home. Saia has not shown the trial court abused its discretion under *Lent*.

---

[4]    The trial court here imposed such a three-way search condition, along with a condition allowing searches of Saia's personal effects. Saia does not challenge these conditions.

## B

Saia further contends, and the Attorney General concedes, that the electronic search condition is unconstitutionally overbroad. " 'A probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as constitutionally overbroad.' [Citation.] 'The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights—bearing in mind, of course, that perfection in such matters is impossible, and that practical necessity will justify some infringement.' " (*People v. Pirali* (2013) 217 Cal.App.4th 1341, 1346.) We independently review whether a probation condition is constitutionally overbroad. (*People v. Appleton* (2016) 245 Cal.App.4th 717, 723 (*Appleton*).)

Courts have rejected similar electronic search conditions as unconstitutionally overbroad. (*Appleton, supra*, 245 Cal.App.4th at p. 727; *P.O., supra*, 246 Cal.App.4th at p. 298.) We therefore accept the Attorney General's concession and direct the trial court to strike the challenged portions of the search condition. However, because we have determined an electronic search condition may be permissible under *Lent*, we will remand this matter to the trial court to consider whether and how the search condition could be narrowed to eliminate overbreadth concerns. (See *Appleton,* at p. 727.)

14

DISPOSITION

The judgment against Davis is affirmed. The order granting formal probation to Saia is reversed, and the matter is remanded to the trial court with the following instructions. The trial court shall strike the portion of Saia's probation condition requiring him to submit his "computers" and "recordable media" to search. The trial court shall consider fashioning an alternative probation condition consistent with this opinion.

McCONNELL, P. J.

WE CONCUR:


NARES, J.


PRAGER, J.*

---

\* Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.