Filed 2/7/22  P. v. Abernathy CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C092495 |
| Plaintiff and Respondent, | (Super. Ct. No. 93F06757) |
| v. | |
| CHRISTIAN MATTHEW ABERNATHY, | |
| Defendant and Appellant. | |

In 1995 a jury found defendant Christian Matthew Abernathy guilty of first degree murder, assault with a firearm, attempted robbery, and robbery.  The jury also found true a robbery-murder special circumstance alleged by the People.  The trial court sentenced defendant to life without the possibility of parole.  We affirmed that judgment in *People v. Wright* (1996) 52 Cal.App.4th 203 (*Wright*).

1

On March 27, 2019, defendant petitioned the trial court for resentencing pursuant to Penal Code section 1170.95.[1] The People opposed the petition. The trial court appointed counsel and both parties submitted briefs to the court. On December 27, 2019, the trial court denied the petition finding defendant was barred from relief because the jury's special circumstance finding meant defendant was a major participant in the crime who acted with reckless indifference to human life. The court issued an amended order on June 4, 2020.

Defendant appeals from the amended order denying his petition for resentencing. He argues the decisions in *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522 render the jury's special circumstance finding legally insufficient to prove he was a major participant who acted with reckless indifference to human life. As such, the trial court's order was in error. We conclude there was no error and affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

I

*Underlying Facts*

The relevant facts are taken from our opinion, *Wright, supra*, 52 Cal.App.4th 203.

"Victim Moore was driving his Oldsmobile convertible on the afternoon of April 25, 1993, with three passengers. Victim Brown was in the back. As Moore turned left onto the street where his female passenger lived (in the vicinity of Watt Avenue and A Street), a Hyundai was sitting at the stop sign. Neither he nor his female passenger recognized the car or its occupants. He drove down the street and began making a wide U-turn to park on the other side of the street. He noticed the Hyundai had made a U-turn

---

[1] Undesignated statutory references are to the Penal Code.

and was coming toward him. It pulled in front of him before he completed his U-turn, blocking his way.

"Defendants Wright and Abernathy (also known as 'Joker' and 'Snoop') were passengers in the Hyundai. The five occupants of the Hyundai had been drinking and smoking marijuana throughout the day, and were on a trip to buy more alcohol when they crossed paths with the Oldsmobile occupants. Although defendant Wright had brought the car, he made someone else drive on this trip because he was too drunk and high; the other Hyundai occupants testified he appeared intoxicated. Two of the other Hyundai occupants (the third 'wasn't paying attention') and another drinking companion also described defendant Abernathy as intoxicated. Both defendants claimed at trial as well that by the time they encountered the Oldsmobile, they felt intoxicated.

"As summarized in defendant Abernathy's brief, 'two people got out of the Hyundai and approached the Oldsmobile. After a brief exchange of words [which the Oldsmobile occupants took as a demand for money], one drew a gun and fired, killing [victim Brown] and injuring [victim Moore]. [¶] The prosecutor called seven eyewitnesses to testify to the events of that afternoon. All basically agreed to the above series of events. Five testified that Wright was the shooter[,] . . . two recall[ing] that Abernathy was standing near Wright and was actually trying to stop Wright from shooting. [The sixth eyewitness] reversed the identities, testifying that Abernathy was the shooter and that Wright did everything in his power to try and stop the shooting. Finally, [the seventh eyewitness] testified that he was not sure who did what to whom.'

"As might be expected, each defendant claimed the other was the shooter. Each also claimed the incident was not pursuant to any prearranged plan. Defendant Abernathy admitted he was a gang member who regularly carried a gun. He claimed, however, that he approached the Oldsmobile with his gun at his side without any intention to use it and never pointed it at anybody; an Oldsmobile occupant corroborated his account. Defendant Wright claimed defendant Abernathy got out of the car with a

3

gun; he followed to prevent anything from happening. He had not been aware defendant Abernathy was even carrying a gun. Defendant Wright denied he ever possessed a gun on that afternoon. After defendant Wright was unsuccessful in attempting to disarm defendant Abernathy at the Oldsmobile, defendant Abernathy shot at the victims. By its felony-murder verdicts, the jury apparently believed defendant Wright was the shooter and both defendants intended to participate in a robbery of the occupants of the Oldsmobile." (*Wright, supra*, 52 Cal.App.4th at pp. 206-207.)

The People charged defendant with first degree murder (alleging the special circumstance of robbery murder and personal use of a firearm), attempted murder, attempted robbery, and robbery. A jury found defendant guilty of first degree murder and found true the robbery-murder special circumstance allegation, but found defendant did not personally use a firearm. The jury also found defendant guilty of the lesser included offense of assault with a firearm, attempted robbery, and robbery. The trial court sentenced defendant to life without the possibility of parole.

On December 13, 1996, this court affirmed the judgment in a partially published opinion. (*Wright, supra*, 52 Cal.App.4th 203.)

II

*Procedural History*

Defendant's section 1170.95 petition for resentencing contains a declaration stating that (1) an information was filed against him that allowed the prosecution to proceed under a felony murder or natural and probable consequences theory, (2) he was convicted of first degree murder by a jury pursuant to the felony murder and/or the natural and probable consequences doctrine, and (3) he could not now be convicted of murder because of the changes to sections 188 and 189, effective January 1, 2019. Specifically relevant here, defendant declared he was not a major participant who acted with reckless indifference to human life during the course of the crime. The People

4

opposed the petition. Appointed counsel for defendant responded to the People's opposition.

The trial court "examined the court's underlying file" and, on December 27, 2019, the court denied defendant's petition. The trial court explained that the court file showed defendant "was convicted of one count of Penal Code [section] 187[ subdivision ](a) first degree murder and that one robbery-murder special circumstance was found true with regard to the murder . . . ."

The court further explained that "[a]t trial, the jury was instructed on the requirements for finding true a robbery-murder special circumstance, including the requirement that the jury find that defendant . . . was either the actual killer, acted with intent to kill, or was a major participant in the robbery who acted with reckless indifference to human life. As such, in finding true the robbery-murder special circumstance, the jury necessarily determined, unanimously and beyond a reasonable doubt, that defendant . . . was either the actual killer, acted with intent to kill, or was a major participant in the [crime] who acted with reckless indifference to human life."

The court also found defendant had not "obtained any order from any court vacating his murder conviction or the robbery-murder special circumstance." Under such circumstances, the court concluded, defendant was not eligible for relief under section 1170.95.

Defendant's counsel moved the trial court to amend and/or clarify its December 27, 2019, order and on June 4, 2020, the court amended the order to include the following paragraph: "IT IS ORDERED that the Penal Code [section] 1170.95 filed by defendant . . . , seeking relief from his first degree murder conviction in Case No. 93F06757, is DENIED, without prejudice to defendant filing a new Penal Code [section] 1170.95 petition if and when defendant . . . is able to obtain habeas corpus relief from his robbery-murder special circumstance that was found to be true by a jury in that case."

## DISCUSSION

### I

### *Senate Bill No. 1437*

Senate Bill No. 1437 (2017-2018 Reg. Sess.), which became effective on January 1, 2019, was enacted "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) The legislation accomplished this by amending sections 188 and 189 and adding section 1170.95 to the Penal Code.

Section 188, which defines malice, now provides in part: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) Section 189, subdivision (e) now limits the circumstances under which a person may be convicted of felony murder: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) [(defining first degree murder)] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

Senate Bill No. 1437 also added section 1170.95, which allows those "convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences

6

doctrine, or manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply:  [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine.  [¶] (2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial . . . .  [¶] (3) The petitioner could not presently be convicted of murder or attempted murder because of changes to [s]ection 188 or 189 made effective January 1, 2019."  (§ 1170.95, subd. (a), as amended by Stats. 2021, ch. 551, § 2.)

"Within 60 days after service of a petition that meets the requirements set forth in subdivision (b), the prosecutor shall file and serve a response.  The petitioner may file and serve a reply within 30 days after the prosecutor's response is served.  These deadlines shall be extended for good cause.  After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief.  If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause."  (§ 1170.95, subd. (c), as amended by Stats. 2021, ch. 551, § 2.)

## II

### *Record of Conviction*

Defendant contends the trial court erred by looking beyond the petition to find he failed to present a prima facie case for relief under section 1170.95.

Our Supreme Court has explained that section 1170.95, subdivision (c) requires "only a single prima facie showing."  (*People v. Lewis* (2021) 11 Cal.5th 952, 962.)  A trial court "may look at the record of conviction after the appointment of counsel to

7

determine whether a petitioner has made a prima facie case for section 1170.95 relief, [but] the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citations.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citations.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Id.* at p. 971.) While appellate opinions "are generally considered to be part of the record of conviction . . . the probative value of an appellate opinion is case specific, and 'it is certainly correct that an appellate opinion might not supply all answers.' " (*Id.* at p. 972.) Thus, "[i]n reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Ibid.*)

Here, there was no error. Defendant filed his petition, the People opposed the petition, and defendant (through appointed counsel) filed a reply. The court then reviewed the record of conviction and based on the jury's verdict, which was upheld on appeal, the court found defendant failed to establish a prima face case for relief under section 1170.95. Our Supreme Court has made it clear this is the appropriate procedure under section 1170.95. (*People v. Lewis, supra*, 11 Cal.5th at p. 971.)

III

*Special Circumstances*

Defendant also argues the trial court erred when it denied his petition on the ground that defendant was a major participant in the crime who acted with reckless indifference to human life. Specifically, defendant contends that under *Banks* and *Clark*,

8

which were decided after his conviction, the trial evidence is now insufficient to prove defendant was a major participant who acted with reckless indifference to human life. Thus, defendant argues, he is not barred from relief and is entitled to have his petition granted. The People disagree. They argue defendant is barred from section 1170.95 relief and must seek relief by way of a habeas corpus petition. We agree with the People.

A split has developed regarding whether section 1170.95 is a proper vehicle for defendants to challenge a jury's special circumstances finding, and therefore, their convictions based on the narrowed constructions of "major participant" and "reckless indifference to human life" set forth in *Banks* and *Clark*. (Compare *People v. Gomez* (2020) 52 Cal.App.5th 1, review granted Oct. 14, 2020, S264033; *People v. Galvan* (2020) 52 Cal.App.5th 1134, review granted Oct. 14, 2020, S264284; *People v. Murillo* (2020) 54 Cal.App.5th 160 [defendant barred from § 1170.95 relief because of jury's special circumstances finding, but defendant may challenge conviction through writ of habeas corpus], review granted Nov. 18, 2020, S264978, with *People v. Torres* (2020) 46 Cal.App.5th 1168, review granted June 24, 2020, S262011; *People v. York* (2020) 54 Cal.App.5th 250, review granted Nov. 18, 2020, S264954; *People v. Smith* (2020) 49 Cal.App.5th 85 [a jury's pre-*Banks* and *Clark* special circumstances finding does not preclude defendant from § 1170.95 relief], review granted July 22, 2020, S262835; see also *People v. Allison* (2020) 55 Cal.App.5th 449 [criticizing *York*]; *People v. Jones* (2020) 56 Cal.App.5th 474 [following *Gomez*, *Galvan*, & *Allison*], review granted Jan. 27, 2021, S265854; *People v. Nunez* (2020) 57 Cal.App.5th 78 [following *Allison*, *Gomez*, *Galvan*, & *Murillo*], review granted Jan. 13, 2021, S265918.)

We, however, are persuaded by the reasoning in *Galvan* and cases reaching the same conclusions. To the extent defendant wishes to challenge the felony-murder special-circumstance finding, his remedy is to pursue extraordinary relief by way of habeas corpus. Because *Banks* and *Clark* merely clarified the kind of conduct proscribed by statute, "a defendant whose conviction became final before that decision 'is entitled to

9

post-conviction relief upon a showing that his [or her] conduct was not prohibited by the statute' as construed in the decision. [Citation.] 'In such circumstances, it is settled that finality for purposes of appeal is no bar to relief, and that habeas corpus or other appropriate extraordinary remedy will lie to rectify the error.' " (*In re Scoggins* (2020) 9 Cal.5th 667, 673-674.)

For all these reasons, we conclude the trial court did not err when it denied defendant's petition.

DISPOSITION

The order denying defendant's petition for resentencing is affirmed.

/s/
HOCH, J.

We concur:

/s/
BLEASE, Acting P. J.

/s/
DUARTE, J.